# EXHIBIT C

**TRANSLATION**

# International service and taking of evidence in ordinary civil proceedings

*By administrative officer in the Ministry of Justice and university lecturer JENS K. A. DINESEN*

### Extract from page 134, middle of first column

Thus, section 163(2) has in reality, both in Denmark and abroad, transformed the service system to a general rule requiring proof of personal receipt regardless of the form, (however, as exemplified in section 155, section 156 and section 157(1) and 157(3)), as well as a number of exceptions where documents can be served on others on behalf of the recipient, cf. section 157(1)(2) and 157(4), in that section 158 now solely provides independent legal basis as regards service on persons other than the person concerned.

Accordingly, direct approach by private individuals to the recipient as well as other acts, which potentially could be contrary to treaties and the law of the territorial state, may have legal effect as service in this country.



# International forkyndelse og bevisoptagelse i almindelige borgerlige retssager

Af fuldmægtig i justitsministeriet, universitetsmanuduktør JENS K.A. DINESEN

## 1. Indledning

### 1.1. Baggrund og begreber

Det principielle udgangspunkt for alle overvejelser vedrørende forkyndelse og bevisoptagelse i udlandet er territorialhøjhedens grundsætning. Denne udelukker, at den stat, hvor en tvist verserer – i det følgende kaldet »processtaten« – kan bruge sit magtapparat i udlandet, og den giver en anden stat – i det følgende kaldet »territorialstaten« – ret til at modsætte sig enhver handling foretaget af fremmede myndighedsrepræsentanter eller private på dens område.

Når processtaten ikke mener at kunne undvære de ønskede handlinger eller erstatte dem med nogen, der kan foretages på dens eget territorium, kræves et samarbejde mellem den og territorialstaten.

Dette omtales ofte under overskrifterne »international retshjælp« og »internationale retsanmodninger«, men blandt andet fordi disse udtryk i praksis også benyttes om forskellige regler om lige adgang til domstole med videre uanset statsborgerskab og bopæl samt anerkendelse og fuldbyrdelse af udenlandske domme, foretrækkes her betegnelsen »internationale processkridt« som fællesnævner for de behandlede forkyndelser af retlige og udenretlige dokumenter samt bevisoptagelse og lignende retsskridt i borgerlige sager.

Den mere omfattende sammenkædning af emner sker ikke blot terminologisk, men også i mange traktater (jfr. nedenfor under 1.2.) og i nogle af de samlinger af materiale fra Haagercivilretskonferencerne, der i det følgende citeres som »actes«, »documents« eller »actes et documents« med årstalsangivelse. (I øvrigt benyttes den i november 1984 foreliggende nyeste udgave af de citerede danske værker). Det samme vil gælde for en kildesamling, som Den danske Dommerforening har taget initiativ til at udarbejde. (Indtil denne udgivelse må retskilderne søges i lovtidende A eller C eller i ministerialtidende, hvortil angivelserne A, C og M i det følgende henviser. Ved U betegnes en utrykt kilde).

## 1.2. De særlige folkeretlige regler om international bistand ved forkyndelse og bevisoptagelse

Staternes samarbejde om løsningen af de ovenfor skitserede problemer beror i dag normalt på faste bilaterale eller multinationale aftaler. Hvor dette ikke er tilfældet, må det imidlertid formentlig stadig antages, at den imødekommenhed, der generelt udvises, beror ikke på en følelse af sædvaneretlig forpligtelse, men på helt frivillig venlighed (»comitas«), eventuelt kombineret med et krav eller ønske om gensidighed.

Se herom Heinrich Nagel: Nationale und internationale Rechtshilfe in Zivilprozess, das europäische Modell (1971) p 45f, 65ff, 122 og 182, Hans Blix: Statsmyndigheternas internationella förbindelser (1964) p 149, István Szaszy: International Civil Procedure a Comparative Study (1967) p 649, Louis Chatin: Entraide Judiciaire Internationale en matiere civile, commerciale et administrative (1978) p 883 og Trolle i UfR 1972B138. Om processtatens egenhændige myndighedsudøvelse, se nedenfor under pkt. 2.

Haagercivilproceskonventionerne af 14. november 1896, 17. juli 1905 (bekendtgørelse nr. 119 af 19. maj 1909 (A)) og 1. marts 1954 (bekendtgørelse nr. 33 af 7. juni 1960 (C)) var i mange år de dominerende retsgrundlag for internationale forkyndelser og bevisoptagelser.

Konventionen af 1896 blev helt afløst af 1905-konventionen, som i dag alene gælder for Danmarks forhold til Island og Østtysk-

land (DDR), hvilke lande i øvrigt først ved noter af henholdsvis 1963 og 1973 har erklæret at ville benytte dens regler.

1905-konventionen og 1954-konventionen afviger så lidt fra hinanden, at de i det følgende almindeligvis vil blive omtalt i flæng som »civilproceskonventionerne«. Deres kapitel I om forkyndelser er i forholdet mellem en lang række af deltagerlandene (deriblandt Danmark) senere afløst af den særlige forkyndelseskonvention af 15. november 1965 (bekendtgørelse nr. 15 af 13. februar 1970), ligesom kapitel II er afløst af bevisoptagelseskonventionen af 18. marts 1970 (bekendtgørelse nr. 117 af 7. december 1973 (C)). Foruden disse lande har – således som det var et væsentligt formål – også blandt andre Storbritannien og USA tiltrådt de to nye konventioner.

Efter de pr. 1. december 1984 offentliggjorte oplysninger regulerer 1954-konventionens kapitel I nu forholdet mellem Danmark og Jugoslavien, Libanon, Marokko, Polen, Rumænien, Schweiz, Sovjetunionen, Spanien, Suriname, Ungarn, Vatikanstaten og Østrig. Kapitel II har betydning for bevisoptagelsesanmodninger til og fra de samme lande samt Belgien, Egypten, Japan og Tyrkiet. Den særlige regel i 1954-konventionens art. 24 om vederlag for sådanne retsskridt i fri proces- og retshjælpssager er dog (indtil Danmarks ratifikation af en ny konvention om blandt andet dette spørgsmål) fortsat gældende i relation til samtlige deltagerlande, det vil sige yderligere Finland, Frankrig, Holland, Israel, Italien, Luxembourg, Norge, Portugal, Sverige, Tjekkoslovakiet og Vesttyskland.

De sidstnævnte lande har sammen med Barbados, Storbritannien og USA ratificeret både forkyndelses- og beviskonventionen.

Herudover har Belgien, Botswana, Cypern, Egypten, Japan, Malawi, Seychellerne og Tyrkiet ratificeret forkyndelses- men ikke beviskonventionen, og Singapore har ratificeret bevis- men ikke forkyndelseskonventionen.

De hidtil nævnte konventioner betegnes ofte som »Haagerkonventionerne«.

En væsentlig, men noget overset konvention om blandt andet de samme emner er den dansk-britiske civilproceskonvention. Den kan i dag antages at gælde i relation til Australien, Bahamas, Canada, Cypern (med særlige regler for de britiske baser), Fiji, Lesotho, Malawi, Nauru, New Zealand, Nigeria, Storbritannien, Swaziland, Tanzania og Tonga. I øvrigt gælder for denne konvention som for Hagerkonventionerne, at en lang række nu selvstændige lande i deres egenskab af britiske, henholdsvis (for 1954-konventionen) franske, hollandske og – måske – portugisiske territorier har været medinddraget. Da de pågældende stater ofte på baggrund af aftaler med moderlandet har fraveget »clean slate«-princippet, (jfr. Alf Ross: Lærebog i Folkeret, p 173 f, og Max Sørensen (red): Manual of Public International Law, p 294 f og 300 ff), bør det i de konkrete tilfælde undersøges nærmere, om de har været og fortsat er omfattet. (Det kan oplyses, at Bangladesh, Indien, Kenya, Pakistan og Uganda ikke er omfattet af den dansk-britiske konvention).

Alle Haagerkonventionerne har bestemmelser om udvidelse til yderligere territorier, men medens 1905-konventionen som udgangspunkt gjaldt for landenes europæiske områder, hvilket i 1954-konventionen er omformuleret til »moderlandet«, har forkyndelses- og beviskonventionerne ingen sådanne bestemmelser. Den dansk-britiske konvention kræver udtrykkelig angivelse af de britiske områder, der er omfattet.

Danmark har ikke på noget tidspunkt afgivet særlige erklæringer, og det må derfor antages, at hele riget er omfattet af konventionerne, dog med den ene undtagelse, at 1905-konventionen (samt formentlig de i henhold hertil indgåede særaftaler, jfr. Bülow-Arnold, Internationaler Rechtsverkehr in Zivil- und Handelssachen p 301) ikke gælder for Grønland, jfr. Ole Espersen: Indgåelse og opfyldelse af traktater, p 427 ff. Forholdet til den dansk-britiske konvention forekommer dog tvivlsomt.

Haagerkonventionerne åbner mulighed for tillægsaftaler om lempelse af forskellige krav med hensyn til fremsendelse og oversættelse af dokumenter m.v., og det gælder som et almindeligt princip, at aftalerne beva-

rer gyldigheden, selvom en ny konvention erstatter den oprindelige. (Ofte vil den nye konvention dog begrænse eller helt fjerne tillægsaftalernes betydning).

Danmark har – omend i nogle tilfælde uden egentlig tilknytning til konventionerne – indgået relevante aftaler med de nordiske lande, Frankrig, Luxembourg, Israel, Polen, Vesttyskland og Østrig. Aftalernes retsvirkninger vil blive skitseret på de pågældende steder i det følgende.

De i Danmark, Norge, Finland og Sverige indførte love om nordisk vidnepligt hører systematisk ikke hjemme i denne fremstilling, da de må antages ikke at kunne benyttes ved udenlandske begæringer om bevisoptagelse, men på grund af deres anvendelighed som alternativ til de her skildrede regler skal opmærksomheden henledes på dem.

## 1.3. Konventionernes saglige område og muligheden for at gøre undtagelser ud fra ordre public-synspunkter

Samtlige de nævnte 5 konventioner er begrænset til at angå »civile eller kommercielle sager«.

Ingen af dem indeholder en nærmere definition heraf, og der er end ikke taget stilling til, om kvalifikationen skal afhænge af proces- eller territorialstatens ret. Af Haagerkonventionernes forarbejder, der under hensyn til den historiske sammenhæng må antages også at være vejledende med hensyn til den dansk-britiske konvention, fremgår, at man bevidst har undgået dette, jfr. actes 1904 p 84, actes et documents 1964 III p 365 og actes et documents 1970 IV p 56. a.st. (Når Nagel (p 76) hævder, at processtatens ret er afgørende, er dette en særlig tysk holdning, som ikke vandt tilslutning blandt de øvrige stater).

Det synes imidlertid at skulle være afgørende, om sagsgenstanden – og således hverken den dømmende myndighed eller procesformen – er af civilretlig karakter. Herefter må fremgangsmåden normalt kunne finde anvendelse også i en dansk adhæsionsproces, når den processuelle sammenhæng med straffesagen ikke (længere) materielt kan give det pågældende processkridt nogen pønale virkninger. Derimod kan det forekomme tvivlsomt, om en territorialstat før strafspørgsmålets afgørelse vil være forpligtet til at imødekomme en anmodning om bevisoptagelse som den, Østre landsret i UfR 1924.188 lod udstede i den borgerlige retsplejes former. Forarbejderne synes på en gang at ville udelukke alle straffesager og medtage alle sager med et civilretligt element, jfr. actes 1904 p 84, men meget kan tale for at holde fast ved det første af disse synspunkter. (De nordiske traktater, den dansk-israelske aftale og den dansk-tyske legaliseringsdeklaration omfatter derimod også straffesager).

Fiskale sager er i praksis i lighed med straffesager undtaget, (jfr. Entraide Judiciaire p 935), hvorimod person- og familieretlige sager, selv når de vedrører personers status, ikke begrebsmæssigt falder uden for konventionerne, jfr. actes et documents 1964 III p 278. (De særlige regler og forhold vedrørende de nævnte grupper af sager er dog af hensyn til overskueligheden ikke medtaget her).

Selvom et skridt foretages eller begæres foretaget i overensstemmelse med formkravene i en konvention, af hvis saglige område det synes omfattet, antages det normalt – også uden særlige bestemmelser herom – at traktaten ikke kan forpligte en stat imod dens ordre public. I de her nævnte konventioner undtages skridt, der ville gribe ind i territorialstatens »suværænitet eller sikkerhed«. Bestemmelsernes rækkevidde er i øvrigt ikke fastlagt, men selvom det ikke kan antages, at foranstaltninger ligefrem skal være til fare for statens eksistens, er der tale om en snæver international ordre publicklausul.

Som teoretiske eksempler anføres normalt forkyndelse af stævninger mod statsoverhovedet eller optagelse af vidneforklaringer om militære anlæg. Også i andre tilfælde vil et dokuments undergravende eller pornografiske karakter f.eks. kunne forhindre forkyndelse, og fra praksis kan nævnes polske afvisninger af tyske retsanmodninger, der omtalte de nu polske dele af det tidligere Preussen ved tyske stednavne eller som værende »for tiden under polsk administration«, jfr. Nagel, a.st. p 191.

I forkyndelses- og bevisoptagelseskonventionerne er det forhold, at territorialstaten alene vil anerkende sine egne domstole som kompetente i sagen, eller at processen tilsigter et i territorialstaten uopnåeligt resultat, udtrykkeligt undtaget fra ordre publicforbeholdet. Dette synes i overensstemmelse med de tidligere konventioners motiver, jfr. actes 1894 p 52, men praksis har øjensynlig vist et behov for en klar udtalelse herom, jfr. actes et documents 1964 III p 124.

Det må tilføjes, at de generelle ordre public-forbehold i realiteten suppleres ganske effektivt af henvisninger til territorialstatens retsregler for så vidt angår udførelsesmåden.

### 1.4. Forholdet mellem de folkeretlige og de nationale regler

Set ud fra en national synsvinkel er gældende ret afhængig af de enkelte landes opfattelse og udfyldning af de rammer, som konventionerne og den almindelige folkeret lægger for deres virksomhed som proces- eller territorialstat.

Haagerkonventionerne forpligter i realiteten alene territorialstaten til at åbne mulighed for foretagelse af de nævnte processkridt, hvorimod dette lands formregler respekteres i meget vidt omfang. Man har tilsvarende undladt at gribe ind i processtatens regler om behovet for skridtets foretagelse og kravene til udførelsesmåden.

Forkyndelseskonventionen indeholder i art. 15 og 16 nogle relativt detaljerede regler om afsigelse af udeblivelsesdomme og senere genoptagelse. Anvendelsen af disse regler, om hvis indhold, (som synes at kunne rummes inden for retsplejelovens tilsvarende bestemmelser), der henvises til konventionen, forudsætter imidlertid, at der efter processtatens interne regler skulle ske forkyndelse i udlandet.

### 2. Processkridt foretaget i Danmark uden det danske retsvæsens medvirken

### 2.1. Forkyndelse gennem postvæsenet

Hverken den almindelige folkeret (jfr. actes

1893 p 64) eller den internationale postkonvention kan antages at hjemle en ret til at forkynde dokumenter ved at sende dem med brev til udlandet, og både civilproceskonventionerne og forkyndelseskonventionen giver i henholdsvis art. 6, stk. 2, jfr. stk. 1, nr. 1, og art. 10, litra a, territorialstaten ret til at modsætte sig forkyndelse på denne måde. Danmark har imidlertid ikke rejst indvendinger mod fremgangsmåden, og postvæsenet kan således benyttes til forkyndelse af udenlandske dokumenter i Danmark. Adgangen synes efter forkyndelseskonventionens forarbejder at omfatte fremsendelse som anbefalet eller almindeligt brev eller som telegram, jfr. actes et documents 1964 III p 82 f. Derimod forpligter konventionerne næppe Danmark til at lade postbude udfylde de i retsplejelovens § 155, nr. 2, nævnte afleveringsattester. I denne relation må embedsmanden principielt opfattes som en stævningsmand, hvis medvirken efter den danske tiltrædelseserklæring til forkyndelseskonventionen er udelukket, jfr. herom nærmere nedenfor under 3.2.

### 2.2. Diplomatisk og konsulær forkyndelse

Det er et sædvanligt led i en diplomatisk og konsulær repræsentations opgaver at varetage udsenderstatens og dens borgeres interesser og at holde kontakt med de borgere, der har ophold i modtagerstaten. Alligevel kan modtagerstaten som udgangspunkt drage grænserne for repræsentationens funktioner, og hverken den almindelige folkeret eller Wienerkonventionen om konsulære forbindelser (jfr. bekendtgørelse nr. 83 af 11. december 1972 (C)) giver de udsendte embedsmænd en ubetinget ret til at foretage nogen former for forkyndelse over for personer på modtagerstatens territorium, jfr. Nagel, a.st. p 73.

Wienerkonventionens art. 5, litra j, giver konsulen ret til at videregive (»transmettre«, »transmit«) judicielle og ikke-judicielle dokumenter i overensstemmelse med internationale aftaler eller på en anden med modta-

gerstatens regler forenelig måde. Danmark har ved ratifikationen erklæret sig indforstået med foretagelsen af disse handlinger i civile og kommercielle sager, men det forekommer noget tvivlsomt, i hvilket omfang udsender- (og her proces-)staten kan tillægge modtagelse eller afvisning af dokumentet retsvirkning, da bestemmelsen ifølge FT 1971-72 A sp 679 ikke hjemler forkyndelse (jfr. Ole Olsen: Den honorære konsul, p 61). Konventionen er transformeret ved lov nr. 67 af 8. marts 1972.

Civilproceskonventionerne giver i art 6, stk. 2, jfr. stk. 1, nr. 3, processtaten en ret til forkyndelse uden tvang for egne statsborgere. Da Danmark har modsat sig, at forkyndelse sker i videre omfang, kan konventionernes bestemmelse herom ikke finde anvendelse her i landet.

Ifølge forkyndelseskonventionens art. 8 kan forkyndelse uden tvang ligeledes altid ske over for processtatens borgere, og da Danmark ikke har afgivet nogen erklæring i denne relation, kan de heri deltagende lande yderligere lade tilsvarende forkyndelse ske over for alle andre personer.

Den dansk-britiske konvention hjemler konsulær forkyndelse over for såvel processtatens som tredjestaters borgere.

Haagerkonventionernes krav om, at forkyndelse skal ske »uden tvang« synes alene at repræsentere en gengivelse af territorialhøjhedens grundsætning, jfr. f.eks. actes et documents 1964 III 232. Umiddelbart indebærer dette derfor, således som det også må være tilfældet for den dansk-svenske traktat af 1912, der gensidigt hjemler ubegrænset adgang til forkyndelse, (jfr. bekendtgørelse nr. 48 af 14. marts 1912), og den dansk-britiske konvention, at processtaten ikke kan udøve egentlig magt ved forkyndelsen. Derimod må det antages, at det hverken er udelukket, at processtatens domstole tillægger et forsøg på forkyndelse retsvirkning, selvom adressaten nægter at modtage dokumentet, eller at forkyndelse gennemføres ved aflevering til andre end adressaten personligt, jfr.

actes et documents 1964 III p 83, 89, 95, 232 og 372 samt actes et documents 1968 IV p 150 og det nedenfor under 2.3. om fortolkningen af det tilsvarende udtryk i beviskonventionens art. 15 anførte.

Disse betragtninger gælder a fortiori for så vidt angår civilproceskonventionerne, som end ikke indeholder beskyttelsesregler vedrørende udeblivelsesdomme svarende til forkyndelseskonventionens art. 15 og 16, hvis betydning i øvrigt i forvejen er stærkt begrænset af det spillerum, der traditionelt gives processtaterne ved afgørelser om konventionernes anvendelighed, jfr. pkt. 1.4.

Den danske tiltrædelse af og holdning til de ovennævnte internationale aftaler har for så vidt angår diplomatiske og konsulære forkyndelser i Danmark i almindelighed hjemmel i lov nr. 75 af 12. april 1911 om forkyndelse af stævninger i udlandet m.v., hvorefter sådan overenskomst kan indgås under forudsætning af gensidighed.

Hvor der ikke foreligger en sådan aftale om gensidighed, må det overvejes, om forkyndelsesloven efter den formelle lovs princip medfører, at der må kræves særlig lovhjemmel, jfr. Max Sørensen: Statsforfatningsret, p 202. På baggrund af lovens formulering og forarbejder samt bemærkningerne til loven om konsularkonventionen (jfr. FT 71-72 A a.st.), må det dog nærmest antages, at der ikke herved er taget stilling til administrationens meddelelse af enkeltstående eller mere generelle tilladelser, så længe der ikke opstår en egentlig forpligtelse for Danmark. Denne opfattelse synes fulgt i praksis, og den danske undladelse af at afgive en begrænsende erklæring efter forkyndelseskonventionens art. 8, stk. 2 må, da den til enhver tid kan ændres, betragtes som et udslag heraf, jfr. actes et documents 1964 III p 234.

## 2.3. Diplomatisk eller konsulær bevisoptagelse.

Den almindelige folkeret giver heller ikke de faste repræsentanter lov til at optage bevis i modtagerstaten (territorialstaten), og Danmark har i relation til såvel konsularkonventionens art. 5, litra j, som civilproceskonventionernes art. 15, og bevisoptagelseskonventionens kapitel II, afgivet erklæringer, hvorefter sådanne handlinger i hvert enkelt tilfælde kræver tilladelse.

Ansøgninger herom, (der, hvis de fremkommer fra stater, der ikke har ratificeret forkyndelseskonventionen, i overensstemmelse med almindelig folkeret bør indgives gennem udenrigsministeriet), er efter justits

ministeriets faste praksis igennem årtier normalt blevet afslået, da man af principielle grunde må nære afgørende betænkelighed ved fremgangsmåden, (cfr. Hans Smit (ed): International Cooperation in Litigation: Europe, p 63, A Philip: Danish-American Private International Law p 35 og actes et documents 1968 IV, p 71, men jfr. sidstnævnte p 129). Dette skyldes navnlig, at den forekommer væsentlig mindre betryggende end den nedenfor under 5.2. beskrevne metode, hvorved bevis ret hurtigt, let og billigt kan optages ved danske domstole. Ved afgørelsen vil både begrundelsen for ønsket og de tilbudte garantier for parternes og vidnernes retssikkerhed blive tillagt betydning, og hvis tilladelsen rent undtagelsesvis gives, kan der stilles betingelser med hensyn til handlingens foretagelse, jfr. bevisoptagelseskonventionens art 19. En anmodning om tvangsmæssig bistand (jfr. art. 18) kan næppe tænkes imødekommet.

Det har væsentlig betydning for den danske holdning til diplomatisk og konsulær bevisoptagelse, at processraten uanset formuleringen »uden ... tvang« i Haagerkonventionerne ikke vil være forhindret i at sanktionere nægtelser af at medvirke, (jfr. actes et documents 1968 IV p 149f og 216), således at alene det almindelige folkeretlige forbud mod egentlig magtanvendelse på fremmed territorium respekteres, (jfr. actes 1904 p 72 og actes et documents 1968 IV p 67). Selvom strafansvar normalt ikke vil blive aktuelt, kan i alt fald parternes stilling i en proces blive påvirket, jfr. Bangert, Due og Philip i NTfIR 1971 p 333.

Den danske modstand mod sådan bevisoptagelse gælder også uden for konventionernes område, og den må på grund af omgåelsesfaren antages at være uafhængig af, om initiativet – formelt eller reelt – tages af repræsentationen, en part eller en tredjemand.

Det særlige behov for optagelse af bevis på anden måde end gennem danske domstole, som kan foreligge, når processtaten er et såkaldt »common law«-land, hvis kompetence- og formregler afviger væsentlig fra de danske, er imidlertid i nogen grad imødekommet i den dansk-britiske konventions art.

9, jfr. nærmere nedenfor under pkt. 2.4.

Den eneste lov, der kan siges at tage stilling til diplomatisk og konsulær bevisoptagelse i Danmark, er den ovenfor nævnte lov om konsulære forbindelser, som under hensyn til bemærkningerne til forslaget i FT 71-72 a.st. må formodes at have godkendt den skildrede administrative praksis, som kan udmøntes i sagligt begrundede konkrete eller generelle tilladelser.

Reglerne i straffelovens §§ 158-162 kan ikke finde anvendelse i de pågældende situationer, da der ikke er tale om en domstol, ligesom der ikke vil eksistere en i dansk ret anerkendt pligt til at afgive forklaring eller ret til at gøre dette på tro og love eller lignende måde. En undtagelse må dog muligvis følge af den dansk-britiske konventions bestemmelse om den beskikkedes adgang til at modtage edsaflæggelse. Såfremt man som Oluf Krabbe (kommenteret straffelov, p 77), men modsat Vagn Greve, B. U. Larsen og Per Lindegaard (kommenteret straffelov, p 107) vil lade reglerne i lovens kapitel 17 omfatte udenlandske myndigheder, er § 161 – ligesom i øvrigt §§ 163-164 anvendelige her. Det må inden for de almindelige folkeretlige rammer antages at processtaten frit for, hvorledes den eventuel vil strafsanktionere disse forhold, jfr. actes et documents 1968 IV p 73.

## 2.4. Andres retsskridt:

Medens reglerne om diplomaters og konsulers forkyndelse og bevisoptagelse, (uanset at der principielt må foreligge en internretlig hjemmel), må udformes og sanktioneres i overensstemmelse med folkeretten, vil der over for andre personers handlinger være både behov og mulighed for at reagere på anden måde, såfremt de ønskes forhindret.

Det må dog ud fra formålsbetragtninger antages, at de forbud, der følger af de under 2.2. og 2.3. anførte regler, som udgangspunkt i mangel af udtrykkelige konventionsbestemmelser herom må gælde analogt for tilsvarende skridt, der på fremmede myndig-

heders initiativ eller med disses godkendelse uden dansk tilladelse foretages af andre personer her i landet, således at også disse vil være folkeretsstridige. Uanset en stats interne kompetenceregler vil den således kunne blive ansvarlig for sine domstoles handlinger, såfremt der herved mod territorialstatens vilje sker en egentlig myndighedsudøvelse, jfr. Alf Ross: Folkeret p 292, Entraide Judiciaire p 934 og actes et documents 1964 III p 125.

Det må forekomme noget tvivlsomt, om en fremmed stat kan vælge at lade forkyndelse ske ved en dertil udpeget person i tilfælde, hvor der er hjemmel for diplomatisk eller konsulær forkyndelse. I alt fald folkeretligt forekommer det dog mest nærliggende at slutte modsætningsvis fra traktaternes udtrykkelige bestemmelser om disse forkyndelsesmåder, således at denne fremgangsmåde, der er uomtalt i Haagerkonventionerne, vil være folkeretsstridig. Ifølge den dansk-britiske konvention art. 4, stk. 1, nr. 2, kan en af procesretten eller en part udpeget person derimod forkynde i samme omfang som konsulerne.

Bevisoptagelse i udlandet ved hjælp af en sådan i overensstemmelse med proceslandets regler udpeget »commissioner« omhandles i bevisoptagelseskonventionens art. 17. Danmark har taget forbehold, og under hensyn til, at der over for den pågældendes eventuelle overtrædelse af vilkår m.v. hyppigt vil være endnu ringere reaktionsmuligheder end over for diplomater og konsuler, gælder de ovenfor under pkt. 2.3. refererede betænkeligheder her a fortiori.

Den dansk-britiske konvention hjemler som den eneste af Danmark indgåede traktat umiddelbart en ret til bevisoptagelse ved commissioner. (Den danske afvisning af noget sådant i relation til beviskonventionen har ikke berørt metodens anvendelighed i forholdet mellem på den ene side Danmark og på den anden side Storbritannien og andre lande, der måtte blive dækket af begge konventioner, jfr. actes et documents 1968

IV p 71). Den pågældende, som eventuelt kan være processtatens konsul, udpeges af den domstol, hvor sagen verserer, og han kan tilsige såvel statens egne som territorialstatens borgere og optage enhver form for bevis, der er tilladt efter territorialstatens ret. Beviset optages på den i processtaten benyttede måde, og parterne har ret til at være til stede eller lade sig repræsentere ved personer, der er mødeberettigede i et af landene.

Denne konvention imødekommer i modsætning til beviskonventionen det danske krav om fuldstændig frivillighed, idet det i art. 9, stk. 5, er bestemt, at vægring fra den tilsagtes side hverken må medføre straf eller anden skadevirkning for ham i relation til processen. Folkeretligt er de mange omfattede stater således forpligtede til at sikre denne bestemmelses overholdelse i deres retssystem. I andre tilfælde vil Danmark til gengæld hverken kunne forhindre eller protestere imod, at en handling, der er foretaget på en efter dansk ret ulovlig måde, tillægges retsvirkning i udlandet, jfr. forudsætningsvis actes et documents 1964 III p 14ff.

Da der heller ikke i den interne danske lovgivning findes bestemmelser herom, må det – også under hensyn til, at dansk ret ikke opstiller helt formalistiske kompetenceregler vedrørende forkyndelse og bevisoptagelse i interne sager, men i vidt omfang overlader det til domstolene at bestemme retsvirkningen ud fra de forelagte oplysninger herom – antages, at dansk ret ikke sætter særlige grænser for de internationale processkridt, der i øvrigt kan foretages udelukkende på initiativ og under medvirken af private personer, jfr. Smit, a.st. p 60. Der synes heller ikke at eksistere regler, der kan forhindre advokater eller notarer i at medvirke, f.eks. ved at attestere underskrifter eller lignende, men dette vil hyppigt kun kunne have effekt, hvis tilsvarende bistand i form af legalisering efterfølgende kan ydes af danske myndigheder og eller fremmede repræsentationer, hvorfor der her er mulighed for at bremse eventuelle forsøg på omgåelse.

### 3. Forkyndelse i Danmark med retsvæsenets bistand

#### 3.1. Generelle og principielle betragtninger

Den afgørelse, som en myndighed træffer med hensyn til forkyndelse af et udenlandsk dokument her i landet, må, hvad enten den giver sig udslag i en egentlig ytring over for borgeren, en handling (f.eks. fysisk viderebefordring) eller et afslag, der alene rettes til den udenlandske anmoder, behandles som en forvaltningsakt.

Lovgivningen indeholder ingen regler, der udtrykkelig fastlægger de materielle betingelser for og kompetencereglerne vedrørende danske myndigheders forkyndelse af udenlandske dokumenter.

Uanset om der (som hævdet af bl.a. Poul Andersen i Dansk Statsforfatningsret, p 536 ff, og Max Sørensen i Statsforfatningsret, p 209 ff) principielt kan tænkes en selvstændig anordningsmyndighed, eller dette ikke er tilfældet, (jfr. Alf Ross: Statsretlige studier, p 71ff, og Alf Ross og Ole Espersen: Dansk Statsforfatningsret, p 219ff og 421ff), vil det afgørende for kravet til styrken af hjemmelen være forvaltningsaktens intensitet i forhold til borgeren, jfr. herved Poul Andersen: Dansk forvaltningsret, p 391f, og Forvaltningsret, almindelige emner, p 151.

For så vidt angår videregivelse af udenlandske dokumenter, må det erindres, at sagen opstår ved en henvendelse til den danske myndighed, som vil være tvunget til at reagere på en eller anden måde. Reaktionens betydning for adressaten afhænger af proceslandets regler, som ofte ikke vil være den danske myndighed bekendt.

Hvis processtatens forkyndelsesregler efter det germanske mønster tilsigter stærk beskyttelse af modtagere af stævninger og lignende, vil formålet med henvendelsen være, at dokumentet bringes til modtagerens kundskab på en måde, der kan tillægges retsvirkninger i processtaten. Et afslag på anmodningen kan herefter medføre enten en fornyet henvendelse under iagttagelse af eventuelle yderligere betingelser eller en »fiktiv« for-

kyndelse, f.eks. ved offentliggørelse eller opslag i hjemlandet. Følger processtaten derimod det traditionelle latinske system, vil der ofte blot være tale om en underretning om en »fiktiv« forkyndelse, der allerede betragtes som foretaget i processtaten, og et dansk afslag vil herefter ikke have retsvirkninger.

Da selv en henvendelse fra myndigheden til adressaten vil kunne få retsvirkninger i processtaten, jfr. nedenfor under 3.3., er det end ikke muligt for myndigheden at vide, hvilken afgørelse, der vil blive opfattet som begunstigende, henholdsvis bebyrdende. Afgørelsen må derfor træffes ud fra mere generelle betragtninger, hvor også det danske retsvæsens behov for at opnå en tilsvarende bistand fra andre lande må veje tungt. På baggrund heraf kan det næppe undre, at såvel lovgivningsmagten som Folketingets Ombudsmand synes at have accepteret en praksis, hvorefter den udøvende myndighed efter et skøn træffer afgørelser i disse sager, og hvorefter regeringen på egen hånd kan indgå traktater, der normerer skønnet.

Kompetencen til at træffe afgørelse er som udgangspunkt hos justitsministeriet, som herved kan udstede såvel konkrete som generelle tjenestebefalinger til domstolene, hvis funktioner i relation til disse forkyndelser nærmest må siges at have administrativ karakter. Materielt begrænses afgørelserne internretligt af de almindelige forvaltningsretlige principper samt de ufravigelige danske retsgrundsætninger, der har fundet udtryk i retsplejelovens regler om forkyndelser. Det synes ikke at have praktisk interesse at diskutere, om hjemmelen herefter har karakter af sædvane, stiltiende bemyndigelse fra lovgivningsmagten eller fortolkning af retsplejeloven.

#### 3.2. Forkyndelse som i interne danske sager

Såfremt en udenlandsk anmodning kan efterkommes ved forkyndelse i overensstemmelse med retsplejelovens almindelige regler, (jfr. om disses anvendelighed RU242 i UfR 1924B 127 og § 10 i bekendtgørelse nr. 255 af 20. juni 1972 (A) om instruks for stævningsmænd), vil selve fremgangsmåden ikke volde betænkeligheder. (I de af konventionerne omfattede tilfælde vil § 159 ikke

kunne finde anvendelse.)

Samtlige traktater giver processtaten krav på, at territorialstaten foretager en sådan forkyndelse, og en anmodning herom fra et ikke-konventionsland vil under forudsætning af de almindelige betingelsers opfyldelse ligeledes blive imødekommet. I praksis vil stævningsmandsforkyndelse normalt blive benyttet, jfr. FT 1971-72 A sp 78ff og justitsministeriets cirkulæreskrivelse af 29. juni 1972 (U).

Som udgangspunkt vil beviset for forkyndelsen i overensstemmelse med reglerne for danske sager (jfr. forudsætningsvis § 157, stk. 3, §§ 6 og 7 i stævningsmandsinstruksen samt justitsministeriets cirkulæreskrivelse af 29. juni 1972), civilproceskonventionernes art. 5 og den dansk-britiske konventions art. 3, stk. 7 bestå i en af dommeren legaliseret stævningsmandsattest, som uden for konventionerne påføres justitsministeriets fremsendelsesskrivelse (jfr. nedenfor under pkt. 7.1.).

Om en ældre aftale med Luxembourg vedrørende en særlig tilbagesendelsesformular henvises til bekendtgørelse nr. 20 af 25. januar 1912 (A).

Hvor dokumenterne i medfør af 1905-konventionen, (der nu er uden større praktisk relevans, jfr. ovenfor under 1.2.), alene er fremsendt i et eksemplar, skal dette overgives til adressaten, og der bør om fornødent knyttes en nærmere beskrivelse af det forkyndte til attesten. (Ifølge civilproceskonventionerne kan forkyndelsen godtgøres ved et modtagelsesbevis). Det samme vil være tilfældet, såfremt man i andre tilfælde rent undtagelsesvis skulle påtage sig at forkynde dokumenter, hvor en bekræftet genpart mangler.

Kravet om fremsendelse af to eksemplarer, – hvilket i princippet gælder alt, hvad der skal forkyndes, herunder retsakter, bilag, oversættelser o.s.v. – er også indsat i forkyndelseskonventionens art. 3, stk. 2. Selvom meningen hermed var, at den centrale myndighed (se pkt. 7.3.) kunne beholde et eksemplar, (jfr. actes et documents 1964 III p 368), tilbagesendes dette efter dansk praksis sammen med den særlige formular, der ifølge art. 6 skal udfyldes i stedet for den traditionelle attest, fra hvilken den indholds-

mæssigt i øvrigt ikke afviger væsentligt. (Kan forkyndelsen ikke foretages, må det generelt formodes, at samtlige dokumenter returneres med en erklæring herom).

### 3.3. Forkyndelse »uden tvang«

Ifølge civilproceskonventionens art. 2 kan den kompetente myndighed i territorialstaten som udgangspunkt nøjes med at udføre forkyndelsen ved overlevering til adressaten, såfremt denne frivilligt modtager dokumentet. Det samme følger af forkyndelseskonventionens art. 5, stk. 2. Metoden kan dog ikke benyttes, såfremt der er udtrykt ønske om forkyndelse i en særlig form (jfr. 3.4.) eller – for så vidt angår civilproceskonventionerne – efter territorialstatens interne regler (jfr. 3.2.), og betingelserne herfor er opfyldt.

Denne forkyndelsesform, der ikke kendes i interne danske retssager, kendetegnes ved, at den alene kan benyttes over for adressaten personligt, jfr. actes 1904, p 86f og actes et documents 1964 III p 154 og 177, og at han ikke kan udsættes for egentlig tvang. Derimod kan processtaten tillægge det passerede retsvirkning som forkyndelse, selvom adressaten afviser dokumentet, jfr. actes 1956 p 168, Entraide judiciaire p 889 og Nagel a.st. p 109, og da i forhold til dansk rets almindelige forkyndelsesregler synes der således alene at ligge en forskel i, at forkyndelse efter retsplejelovens § 157, stk. 1, nr. 2, er udelukket.

De tilfælde, hvor forsøget på at få adressaten til frivilligt at modtage dokumentet trods hans afslag, vil medføre, at det anses for forkyndt, vil være ret fåtallige i forhold til de situationer, hvor en sådan henvendelse er hans eneste chance for at blive bekendt med en allerede sket fiktiv forkyndelse eller for at undgå, at en sådan uden hans vidende gennemføres i processtaten, (jfr. pkt. 3.1.). Derfor vil fremgangsmåden (også uden konventionshjemmel) normalt blive fulgt, såfremt de generelle betingelser for forkyndelse, men ikke de særlige betingelser (med hensyn til

sprog m.v. jfr. pkt. 8.3.) for såkaldt »tvungen« forkyndelse (som beskrevet i pkt. 3.2. og 3.4.) er opfyldt. I denne situation vil det imidlertid blive oplyst over for adressaten, at han ikke er forpligtet til at modtage dokumentet, samt – i påkommende tilfælde – at det under alle omstændigheder vil blive betragtet som forkyndt. Såfremt det ikke vides, hvilken retsvirkning nægtelsen vil have, vil der efter den i FOB 1977 p 455 og 1978 p 58 refererede sag, (hvorved metodens anvendelse i øvrigt synes godkendt), blive tilbudt adressaten en undersøgelse heraf, idet han dog samtidig gøres opmærksom på, at dette muligvis ikke vil medføre udsættelse af eventuelle retsmøder m.v.

Beviset for den frivillige modtagelse kræver ikke en bekræftelse fra den pågældende, jfr. actes 1904 p 86, og der forholdes på dette punkt i det hele taget lige som ved forkyndelse på normal vis, jfr. ovenfor under 3.2.

Begrebet frivillig modtagelse anvendes også i den mellem Danmark, Finland, Island, Norge og Sverige indgåede nordiske retshjælpskonvention, bekendtgørelse nr. 100 af 15. september 1975 (C), art. 2, stk. 2, 7. pkt., (hvorimod det ikke findes i den dansk-britiske konvention). Det er næppe sandsynligt, at noget nordisk land vil tillægge et sådant overleveringsforsøg retsvirkning, hvis modtagelse nægtes.

### 3.4. Forkyndelse på en særlig af processtaten ønsket måde

Ifølge art. 3, stk. 2, i civilproceskonventionerne, art. 3, stk. 5, i den dansk-britiske konvention, og art. 5, stk. 1, litra b, i forkyndelseskonventionen kan processtaten anmode om forkyndelse på en særlig måde.

Dette indebærer, at en forkyndelsesform, der ikke er forudset i dansk ret, skal anvendes, medmindre den er i strid med danske retsgrundsætninger, der ikke specielt er knyttet til sagens behandling ved danske domstole. Ud fra den almindelige regel om, at processtaten bestemmer retsvirkningen af en handling, må det herefter antages, at reglerne om den personkreds, for hvilken der kan ske forkyndelse, inden for rimelighedens grænser kan fraviges – også udvidende – dog uden at der kan knyttes retsvirkning efter § 157, stk. 4, til forkyndelse uden hjemmel i paragraffens stk. 1, nr. 2. (Der er i øvrigt næppe mange lande, hvis retsregler giver væsentlig *større* mulighed herfor end de danske, jfr. Nagel, a.st. p 112ff).

I det omfang, hvori en dansk regel tilsigter ikke at sikre den faktiske fremkomst af dokumentet, men at beskytte adressaten eller andre mod en ufornøden krænkelse, der er uden forbindelse med bevisvurderingen i sagen, må det derimod antages, at en fravigelse heraf hverken er krævet af konventionerne eller tilladt af det i pkt. 3.1. beskrevne interne hjemmelsgrundlag. Dette vil formentlig blandt andet gælde for §§ 4, 5 og 6, stk. 1 i stævningsmandsinstruksen. Ligeledes vil anmodninger kunne afslås, hvis deres efterkommelse vil medføre uforholdsmæssigt administrativt besvær, og denne betragtning vil kunne tillægges særlig vægt, hvis det pågældende land ikke har tiltrådt konventionerne.

### 3.5. Kravene til anmodningens udsteder, formål, form og indhold

Konventionerne vedrører anmodninger fra myndigheder om forkyndelse eller videregivelse af retslige dokumenter samt udenretslige dokumenter, der hidrører fra en retsligt kompetent myndighed eller person, jfr. vejledning nr. 21 af 28. januar 1970 (A).

Såfremt advokater eller andre specialister i processtaten er tillagt en særlig kompetence til at lade foretage forkyndelser, vil de ifølge forkyndelseskonventionens art. 3 på egen hånd kunne foranledige forkyndelse i udlandet, hvorimod det i alle andre tilfælde må antages, at de kun kan gøre dette efter bemyndigelse fra en myndighed, som ifølge den dansk-britiske konvention skal være judiciel, (jfr. actes et documents 1964 III p 183ff, 368 og 375).

Voldgiftsretter, der er nedsat eller hvortil der er rettet henvendelse alene på parternes initiativ, er ikke omfattet, jfr. actes et documents 1968 IV p 97.

Foruden identiteten på anmodningens ud-

steder skal dokumentets karakter fremgå af anmodningen, som ligeledes skal angive navnet og adressen på den person, som det er tiltænkt, samt oplysninger om sagens eventuelle parter m.v., jfr. nærmere civilproceskonventionernes art. 1, stk. 1, og den dansk-britiske konventions art. 3, stk. 2.

Efter forkyndelseskonventionens art. 3, skal oplysningerne om udstederen, parterne, dokumentets art og formål m.v. angives på en særlig formular, der forkyndes for adressaten på samme måde som selve dokumentet, jfr. art. 5, stk. 4. Endvidere skal selve anmodningen udfærdiges på den formular, hvorpå rekvirentens navn og adresse, adressatens navn og adresse samt den ønskede forkyndelsesmåde er angivet. (Den ovenfor under pkt. 3.2.-3.4. omtalte attestation sker på bagsiden af denne formular. Også den dansk-luxembourgske aftale indførte formulartvang.)

Såfremt modtagerens egentlige adresse – det vil sige ikke blot en postboks-adresse eller lignende – ikke kan oplyses, er ingen af de omhandlede konventioner anvendelige. Der påhviler principielt ikke territorialstaten nogen pligt til at eftersøge modtageren, såfremt han er flyttet, eller den oplyste adresse er ufuldstændig, men i Danmark som formentlig i en del andre konventionsstater vil dette i praksis normalt ske i samme omfang som i interne sager, jfr. actes et documents 1964 III p 124.

Selvom det ikke er udtalt direkte i andre internationale overenskomster end forkyndelseskonventionen, skal formålet med henvendelsen til adressaten fremgå, hvilket er nødvendigt dels for hans mulighed for at reagere, dels for at den kompetente myndighed kan overbevise sig om, at anmodningen opfylder de ovenfor under pkt. 1.3. angivne krav.

Såfremt formålet med anmodningen synes at være at fremkalde en reaktion fra adressaten, og dette viser sig umuligt, idet en eventuel tidsfrist er overskredet, må det bero på en fortolkning af henvendelsen, om

forkyndelsen alligevel skal søges gennemført, eller dokumentet straks skal tilbagesendes til rekvirenten. I begge tilfælde bør det nævnte forhold klart angives.

(Der er på europæisk plan fremsat forslag til en fakultativ udvidelse af forkyndelseskonventionens oplysende formular).

## 4.   Forkyndelse af danske dokumenter i udlandet

### 4.1. Behovet

Ifølge retsplejelovens § 158 skal forkyndelse ske i udlandet, hvis adressaten har kendt bopæl eller opholdssted der, og forkyndelse ikke kan ske i Danmark efter reglerne i § 155, nr. 2 og 3, jfr. § 157. Da retsplejelovens §§ 348, 351, 373 og 376 forpligter parterne i en retssag til som led i skriftvekslingen at angive en indenlandsk adresse, hvor meddelelser og forkyndelser kan modtages, har bestemmelsen dog kun betydning i relation til de pågældende for forkyndelse af stævninger og egentlige udeblivelsesdomme (i begge instanser), hvortil kommer, at den tilknytning, som begrunder værneting her i landet, hyppigt vil være ensbetydende med, at der også kan ske forkyndelse i Danmark, jfr. f.eks. UfR 1923 266 Ø og 1980.640 V.

Reglerne om forkyndelse i Danmark for personer, der opholder sig i udlandet, er i overensstemmelse med traktaternes princip om at overlade det til de enkelte stater at afgøre, om modtagerens tilknytning til udlandet kræver forkyndelse der, jfr. actes et documents 1964 III p 159.

### 4.2. Forkyndelse gennem territorialstatens myndigheder med konventionshjemmel

Alle konventioner giver processtaten et krav på de stedlige myndigheders bistand ved forkyndelsen, og såfremt forkyndelsen er sket i overensstemmelse hermed, vil den ifølge § 158 være gyldig efter dansk ret.

Benyttes den ovenfor under 3.3 beskrevne fremgangsmåde, hvor adressaten personlig opfordres til at modtage dokumentet »uden tvang«, vil dette her i landet formentlig kun

blive tillagt retsvirkning som en forkyndelse, hvis han modtager det.

Et krav om forkyndelse efter de for vedkommende lands interne retssager gældende regler har hjemmel i civilproceskonventionernes art. 3, stk. 2, 1. pkt., forkyndelseskonventionens art. 5, stk. 1, litra a, og den dansk-britiske konventions art. 3, stk. 5. Om sådan forkyndelse kan eller skal ske for den pågældende personligt, for andre personer, hvis tilknytning til ham i større eller mindre grad afviger fra den i retsplejelovens § 157, stk. 1, nr. 2, jfr. stk. 2, angivne eller ved en »fiktiv« forkyndelse, f.eks. offentliggørelse, afhænger efter formuleringen af § 158 af territorialstatens nationale regler.

Henvisningen i § 158 til konventionernes regler kan ikke antages at omfatte enhver særlig fremgangsmåde, som territorialstaten i medfør af bestemmelserne i civilproceskonventionernes art. 3, stk. 1, 1. pkt., forkyndelseskonventionens art. 5, stk. 1, litra b, og den dansk-britiske konventions art. 3, stk. 5, efter anmodning kan følge. Disse bestemmelser er så brede, at de ikke foreskriver en forkyndelsesmåde, og de giver derfor ikke selvstændig hjemmel efter § 158. Bl.a. kan de danske regler om forkyndelse for husstandsmedlemmer m.v. ikke på denne måde overføres, idet der ikke er grundlag for analogi, jfr. § 157, stk. 4.

Traktatbestemmelserne kan derimod anvendes til at sikre bevis for gennemførelsen af en forkyndelse, der i øvrigt har hjemmel i konventionen eller i dansk rets øvrige forkyndelsesregler. Dette kan blive aktuelt, fordi domstolenes krav til beviset for en korrekt forkyndelse ikke kan antages at være reguleret af henvisningerne i § 158. Principielt er de danske domstole derfor ikke forpligtet til at lade sig overbevise af den dokumentation, som normalt benyttes i territorialstaten. Ifølge konventionerne vil der af den forkyndede myndighed blive afgivet en erklæring om forkyndelsesmåden og tidspunktet, jfr. pkt. 3.2.)

Tilbagesendes dokumentet gennem en dansk repræsentation (jfr. 7.1.-7.3.) vil denne bekræfte såvel identiteten og kompetencen hos erklæringens udsteder som hjemmelen i territorialstatens lovgivning, hvilket i øvrigt også bør fremgå af selve erklæringen.

Af samme grund bør dokumenter, der skal forkyndes i Island eller Østtyskland, fremsendes i to eksemplarer, således at det ene i medfør af 1905-konventionens art. 5, stk. 2, kan tilbagesendes sammen med den udførende myndigheds erklæring. Opmærksomheden henledes på, at det overfor stater, der følger forkyndelseskonventionens intention med kravet om dobbelt fremsendelse, kan blive nødvendigt at fremsende tre eksemplarer, såfremt et eksemplar – efter udtrykkelig begæring herom – ønskes returneret sammen med den udfyldte formular, jfr. pkt. 3.2.

Anmodninger om forkyndelse efter konventionerne kan uden tvivl fremsættes af domstolene, hvorimod andre myndigheder, der – som f.eks. forbrugerklagenævnene – træffer afgørelse i civilretlige tvister, næppe er omfattet, jfr. Practical handbook on the operation of the Haque Convention of 15. november 1965 (1983), p 53, men cfr. actes 1904 p 84.

Danske advokater kan kun på en domstols vegne anmode om forkyndelse efter konventionerne. Vedrørende kravene til anmodningens formål, form og indhold i øvrigt henvises til de almindelige bemærkninger ovenfor under 3.5.

Drejer det sig om en stævning, der fremsendes gennem en dansk repræsentation i udlandet, bør domstolens berammelsespåtegning af hensyn til fristen være forsynet med en bemyndigelse for repræsentationen til at omberamme den. (Nogle lande accepterer dog ikke denne fremgangsmåde).

## 4.3. Forkyndelse gennem territorialstatens myndigheder uden konventionshjemmel

Konventionerne må antages at regulere korrespondancen mellem de pågældende landes myndigheder, men de forhindrer ikke danske advokater eller private i at rette direkte henvendelse til myndighederne i det pågældende land for at få disse til at foretage en

forkyndelse, der enten opfylder landets interne krav eller i øvrigt har hjemmel i retsplejeloven, jfr. Practical Handbook p 99.

En tilsvarende anmodning kan fremsættes af private samt af de danske myndigheder, såfremt forkyndelsen skal ske i en stat, med hvilken Danmark ikke har nogen særlig overenskomst. Om udfyldningsreglerne vedrørende henvendelser fra danske myndigheder i tilfælde, der ikke reguleres af aftaler eller sædvaner, henvises navnlig til pkt. 1.1., 1.2. og 7.1.

Om bevisbedømmelse m.v. henvises til pkt. 4.2.

### 4.4. Forkyndelse gennem danske diplomatiske eller konsulære repræsentanter i det pågældende land

Danske diplomatiske eller konsulære repræsentanter i udlandet kan forkynde dokumenter med retsvirkning efter § 158, såfremt dette er i overensstemmelse med territorialstatens lovgivning eller har traktathjemmel. (Forkyndelsesloven af 1911 må på dette punkt anses for bortfaldet på grund af retsplejeloven).

Traktathjemmel forligger efter alle konventionerne ubetinget over for danske statsborgere. Ifølge den dansk-britiske konvention kan forkyndelse ligeledes ske over for tredjelandes, men ikke territorialstatens statsborgere, medens Haagerkonventionerne alle lader muligheden for forkyndelse for begge disse kategorier afhænge af, om den enkelte territorialstat ud fra sin lov eller sædvane, (jfr. actes 1893 p 56), modsætter sig dette, (hvorom der efter civilproceskonventionerne kan og efter forkyndelseskonventionen skal være afgivet erklæring), jfr. art 6 i civilproceskonventionerne, art. 8 i forkyndelseskonventionen og art. 4 i den dansk-britiske konvention.

På baggrund af det ovenfor under pkt. 2.3. anførte vedrørende den danske opfattelse af konsularkonventionens art. 5, litra j, må det antages, at denne ikke i relation til § 158 kan hjemle konsulær forkyndelse.

I territorialstatens lov vil der sjældent være udtrykkelig hjemmel til diplomaters eller konsulers forkyndelser. Såfremt forkyndelse i interne sager som f.eks. i mange common law-lande kan foretages af enhver, må dette imidlertid være tilstrækkeligt til at bringe en dansk diplomats eller konsuls forkyndelse i overensstemmelse med § 158.

Sådan »direkte« forkyndelse ved danske repræsentationer i udlandet vil ifølge Instruks for udenrigstjenesten, kap. VIII, afsnit B, pkt. 2, medmindre der foreligger traktathjemmel, alene blive forsøgt, såfremt der fremsættes udtrykkelig anmodning herom, og såfremt territorialstaten ikke modsætter sig det. Forkyndelsen forudsætter, uanset om der findes en traktatbestemmelse herom, den pågældendes personlige og frivillige medvirken, og såfremt dette nægtes, kan dokumentet efter dansk ret ikke betragtes som forkyndt. Herefter er diplomatisk eller konsulær forkyndelse alene en praktisk variant af retsplejelovens § 163, stk. 2, jfr. nedenfor under pkt. 4.5.

Forkyndelsen vil blive søgt godtgjort ved en bekræftelse fra adressaten, jfr. a.st. i instruksen, men i tilfælde af nægtelse heraf må vedkommende embedsmand – som under alle omstændigheder skal bevidne dette – kunne afgive en erklæring om modtagelsen.

### 4.5. Andre reelle forkyndelsesformer m.v.

Ifølge retsplejelovens § 158 kan forkyndelse i udlandet altid ske ved brevforkyndelse, jfr. § 155, nr. 1. Det kan forekomme noget tvivlsomt, om denne bestemmelse er i strid med Haagerkonventionens regler om, at territorialstaten kan modsætte sig fremsendelse gennem postvæsenet, og den almindelige folkeretlige regel, som må antages at have fundet udtryk heri. (I relation til forkyndelseskonventionen har blandt andet Norge, Tjekkoslovakiet, Tyrkiet og Vesttyskland afgivet en sådan erklæring). Sådanne indvendinger synes at være rettet mod tilfælde, hvor selve fremsendelsen udgør en forkyndelse og der-

med en myndighedsudøvelse, hvorfor de ikke nødvendigvis gælder for den danske metode, der er baseret på modtagerens tilbagesendelse af en erklæring om modtagelsen, jfr. actes 1893 p 64, actes et documents 1964 III p 15ff og 82f, Entraide judiciaire p 887 og Nagel, a.st. p 72. Under alle omstændigheder må en sådan forkyndelse efter retsplejelovens formulering formentlig tillægges retsvirkning her i landet, og det samme må være tilfældet for så vidt angår ethvert andet tilfælde, hvor adressaten bevisligt har fået dokumentet i hænde, jfr. § 163, stk. 2. Bemærkningerne til bestemmelsen giver ikke anledning til at opfatte henvisningen til §§ 155-157 som udelukkende dens anvendelse i § 158-situationen, hvis forkyndelsesmåder i realiteten svarer og delvis bygger på en henvisning til de indenlandske, jfr. herved retsplejerådets referat af de tilsvarende svenske regler i FT 1971-72 A sp 77.

§ 163, stk. 2, har således reelt såvel uden- som indenlands forvandlet forkyndelsessystemet til en hovedregel om bevis for personlig modtagelse uanset formen, (som dog eksemplificeret i § 155, § 156 samt § 157, stk. 1 og stk. 3), samt nogle undtagelser, hvor forkyndelse kan ske for andre på adressatens vegne, jfr. § 157, stk. 1, nr. 2, stk. 2 og stk. 4, idet § 158 nu alene giver selvstændig hjemmel for så vidt angår forkyndelse over for andre end den pågældende selv.

Herefter vil såvel privates direkte henvendelse til adressaten som andre forkyndelsesmåder, der eventuelt måtte være i strid med traktaterne og territorialstatens ret, kunne få retsvirkning som forkyndelse her i landet.

Det må endvidere antages, at også personer, der befinder sig i udlandet, vil være bundet af et afkald på forkyndelse (og varsel), jfr. § 160, medmindre deres eventuelle mellemliggende udrejse indebærer, at de kan gøre bristende forudsætninger gældende.

### 4.6. Fiktiv forkyndelse

Retsplejelovens § 159 giver adgang til forkyndelse ved offentliggørelse af en del af meddelelsen samt en begrundelse for fremgangsmåden i Statstidende.

Bestemmelsens almindelige område er de situationer, hvor den pågældendes bopæl eller opholdssted er ukendt, og han ikke har kendt arbejdssted her i landet, jfr. stk. 1, nr. 1. Denne del af paragraffen kan alene anvendes, såfremt rekvirenten har udfoldet en rimelig aktivitet for at få opsporet en sådan adresse, jfr. UfR 1981.393Ø. § 159 kan ifølge stk. 1, nr. 2, også finde anvendelse, hvis den kompetente fremmede myndighed nægter at medvirke til forkyndelse efter § 158. Dette må forudsætte, at anmodningen er fremsat i overensstemmelse med en eventuel traktat og ellers med ethvert rimeligt krav i landets interne ret.

Bestemmelsen kan dog formentlig benyttes analogt, såfremt det af praktiske eller politiske grunde ikke er muligt at kontakte myndigheder, der har kontrol over det pågældende område, jfr. RU 115 i UfR 1922B 39 og UfR 1924.893Ø.

Ved forkyndelse i medfør af § 159, stk. 1, nr. 2, skal en genpart af dokumentet tilsendes adressaten med posten.

### 5. Bevisoptagelse i Danmark med retsvæsenets bistand

### 5.1. Reglerne og deres områder

Ifølge retsplejelovens § 347 udføres bevisoptagelse og andre retshandlinger efter anmodning fra fremmede retter efter lovens og konventionernes regler samt så vidt muligt i overensstemmelse med anmodningen. Bestemmelsen må indenfor det her omhandlede område antages at dække også vidneforklaringer, partsafhøringer og syns- og skønsforretninger, jfr. §§ 190, 209 og 305, idet formuleringsnuancerne næppe dækker over en tilsigtet reel forskel.

Haagerkonventionerne vedrører alle – lige som den dansk-britiske konvention – bevisoptagelse, men inddrager yderligere »andre retshandlinger«. Under hensyn til den historiske sammenhæng må ved dette udtryk både her og i § 347 forstås f.eks. forligsmægling og foreløbig bevissikring, men derimod ikke forkyndelse, fuldbyrdelse, arrest, forbud og lignende, jfr. actes et documents 1968 IV p 57, 158 f og 203, samt Bangert, Due og Philip i NTfIR 1971 p 328. Af praktiske årsager omtales kun det centrale område, bevisoptagelsen her.

Anmodningen skal ifølge samtlige konventioner fremsættes og kunne udføres af en retlig myndighed, hvilket – ligesom ordet »domstol« i § 347 – må opfattes som en karakteristik af organets reelle sammensætning og funktion, hvorved der blandt andet bør lægges vægt på, om det kan bruge vidnetvang, jfr. actes et documents 1968 IV p 158 og 216 samt Entraide judiciaire p 934. (Generelt er det sikrest, at den samme person har underskrevet alle dokumenter vedrørende anmodningen).

Formålet med anmodningen skal ifølge den dansk-britiske konventions indledning og bevisoptagelseskonventionens art. 1, stk. 2, være at skaffe bevis til brug for en eksisterende eller forudset retssag, og Danmark har i medfør af bevisoptagelseskonventionens art. 23 udelukket anmodninger om »pre-trial discovery of documents«, hvilket nu defineres som krav om, at nogen skal give oplysning om eller fremlægge eventuelle u-specificerede dokumenter af betydning for sagen, der måtte være i hans besiddelse, jfr. nærmere bekendtgørelse nr. 49 af 21. april 1982 (C)). (Formentlig kan det ikke sluttes fra disse udtrykkelige regler, at noget sådant er muligt i henhold til de øvrige konventioner, idet afgrænsningen synes i overensstemmelse med den almindelige retsopfattelse, jfr. actes et documents 1968 IV p 157, 171 og 203 f).

§ 347's beskrivelse af betingelserne for og fremgangsmåden ved udførelsen af retsanmodningerne er – navnlig med hensyn til anmodninger uden for konventionerne – ikke udtømmende, og der er ikke i medfør af § 347, stk. 3, udstedt yderligere regler herom.

Det må imidlertid på baggrund af ældre, ikke ophævede love samt af forarbejder og fast praksis på området antages, at det inden for lovgivningens rammer endvidere reguleres af justitsministerielle anvisninger på dette område, hvor domstolenes funktioner traditionelt er behandlet som mere administrative end dømmende, jfr. herved Alf Ross og Ole Espersen: Dansk Statsforfatningsret, p 226 ff og 531 ff, Alf Ross: Statsretlige Studier, p 53 ff, Rt. 1897 A sp 2147f, Rt. 1930-31 A sp 4892, betænkning nr. 404/1066 om ændring af reglerne

om fri proces og organisationen af den vederlagsfri retshjælp, p 49 f, og betænkning nr. 698/1973 om behandling af borgerlige sager, p 129).

For anmodninger, der falder uden for konventionerne, gælder fortsat § 7 i lov nr. 161 af 18. december 1897 om retternes medvirkning til optagelse af bevis i udlandet m.v. som ændret ved § 1 i lov nr. 37 af 28. februar 1908 om tillæg dertil. De administrativt udstedte forskrifter indeholder i første række en gengivelse af forskellige konventioner og landenes erklæringer herom, men også enkelte regler af selvstændig betydning. Om 1905-konventionen er udstedt bekendtgørelse nr. 167 af 20. maj 1932 (A) og cirkulære nr. 107 af samme dato til underretsdommerne uden for København (M). Ifølge cirkulære nr. 244 af 14. november 1960 (M), som i øvrigt ikke indeholder regler af selvstændig betydning, gælder bekendtgørelsen med de af 1954-konventionen følgende ændringer også for denne, hvor også cirkulæret fra 1932 må være analogt anvendeligt.

Disse regler vil formentlig i praksis have en vis indflydelse i andre tilfælde, omend de næppe ligefrem kan anvendes analogt på anmodninger i medfør af den dansk-britiske konvention og beviskonventionen. De ikke direkte omfattede anmodninger skal imidlertid normalt fremsendes gennem justitsministeriet, som derfor vil have mulighed for at træffe bestemmelse om udførelsen.

## 5.2. Udførelsesmåden

Konventionerne tager alle ligesom retsplejelovens §§ 190 og 347, 1897-lovens § 7 og tillægslovens § 1 udgangspunkt i territorialstatens tilsvarende interne regler. Ifølge retsplejelovens § 347, stk. 1, 2. pkt., og 1897-lovens § 1, stk. 2, 1. pkt., skal parterne dog kun i tilfælde af udtrykkelig anmodning derom tilvarsles. Denne bestemmelse supplerer konventionernes regel om, at den anmodende myndighed kan udbede sig underretning om tidspunktet for udførelsen, jfr. navnlig civilproceskonventionernes art. 11, stk. 2. (Ifølge den dansk-britiske konventions art. 8,

stk. 5, er det den konsul, der har ekspederet anmodningen, der kan bede herom. Bevisoptagelseskonventionen giver i art. 7 udtrykkelig hjemmel til, at også parterne kan bedes tilvarslet).

Ifølge samtlige konventioner har parterne ret til at være til stede, og domstolene må i almindelighed kunne afgøre, om det samme gælder for medlemmer af den udenlandske ret, jfr. herved retsplejelovens § 31, stk. 1. Det sidste spørgsmål reguleres udtrykkelig af bevisoptagelseskonventionens art. 8, hvorefter staterne kan afgive erklæring om, at medlemmer af processtatens myndighed kan være til stede. Danmark har afgivet en sådan erklæring og benyttet sig af adgangen til at kræve forudgående tilladelse fra sine domstole.

Ifølge cirkulære nr. 107 af 20. maj 1932 beskikkes der, undtagen ved aflæggelse af partsed, altid en advokat for en udenlandsk part, og initiativet overlades herefter som udgangspunkt til den part, der har foranlediget begæringen fremsat. Hvis dette er en herboende part, og han intet foretager, spørges den anmodende myndighed, om den anden parts beskikkede advokat skal pålægges opgaven.

Den generelle regel om bevisoptagelse efter territorialstatens ret medfører, at vidneafhøringer o.lign. her i landet i de ovenfor beskrevne situationer foretages af parternes repræsentanter, men dette kan også gennemføres af retten i overensstemmelse med traditionen i de såkaldte »droit civil-lande«, jfr. actes et documents 1968 IV, p 59, og betænkning nr. 404/1966, p 50.

Tvang mod vidner og andre skal ifølge konventionerne udøves i samme omfang som i territorialstatens interne sager. Dog undtager civilproceskonventionerne i art. 11, stk. 1, udtrykkelig parterne fra denne bestemmelse, og bevisoptagelseskonventionen bestemmer i art. 11, at vidnefritagelses- og vidneudelukkelsesgrunde i begge stater kan finde anvendelse.

Disse særlige regler må – ligesom beviskonventionens ikke af Danmark udnyttede ret til at afgive erklæring om anvendelse af de tilsvarende bestemmelser om vidner i tredjestater, hvortil vidnet er knyttet – her i landet på grund af retsplejelovens almindelige betingelser for vidnetvang i praksis under alle omstændigheder gælde i nogenlunde samme omfang, jfr. actes et documents 1968 IV p 61 og 209. Formuleringen af konventionernes originale udgaver (på fransk og engelsk) synes at lade det være noget tvivlsomt, om reglerne om vidner og editionspligtige personer også gælder for syns- og skønsmænd, jfr. nærmere actes et documents 1968 IV p 60f, 112ff og 208f.

En særlig anmodning om fravigelse af territorialstatens sædvanlige fremgangsmåde ved den ønskede bevisoptagelse skal så vidt praktisk muligt imødekommes, medmindre den strider mod grundlæggende retsregler i territorialstaten, jfr. herved retsplejelovens §§ 190 og 347 samt bevisoptagelseskonventionens art. 9, stk. 2.

De særlige formkrav skal således efterleves, selvom den pågældende metode er ukendt i dansk ret, såfremt dette alene skyldes en vurdering af dens egnethed til at sikre betryggende bevis, og ikke at den strider mod hensynet til rettens værdighed eller parternes eller tredjemands personlige integritet. Herefter vil anmodningen ikke blot kunne angive en særlig kompetenceregel med hensyn til vidneafhøringen, men også at denne skal ske under ed, jfr. betænkning nr. 316/1962 om vidner, p 112, hvorimod bestemmelserne om strafansvar for nægtelse af at afgive forklaring eller falsk forklaring for retten ikke kan fraviges til skade for den pågældende.

Cirkulære nr. 107 af 20. maj 1932 (M) pålægger retterne at fastholde praksis vedrørende afhøring af embedsmænd, jfr. Gomard, Civilprocessen, p 359.

### 5.3. Anmodningens form og indhold

Bevisoptagelseskonventionen indeholder i art. 3 en liste over de oplysninger, som en anmodning skal indeholde. Herefter skal den anmodende og så vidt muligt den udførende myndighed, parternes og deres rettergangs-

fuldmægtiges navne og adresser, retssagens art og genstand, en kortfattet sagsfremstilling og en beskrivelse af den ønskede retshandling altid medtages. Herudover anføres i påkommende tilfælde de dokumenter eller genstande, der skal undersøges, vidnernes navne og adresser, spørgsmålene eller afhøringstemaerne, eventuelle edsformularer og andre særlige ønsker vedrørende fremgangsmåden samt de for anvendelse af processtatens regler om vidnefritagelse og vidneudelukkelse nødvendige oplysninger.

Den dansk-britiske konventions art. 8, stk. 2, stiller i store træk samme absolutte krav til anmodningens indhold, idet det dog blandt andet ikke er nødvendigt at angive procesfuldmægtigene, hvorimod både parters og vidners stilling skal fremgå. Den skal endvidere indeholde enten en liste over de spørgsmål, der skal stilles, eller en anmodning om, at det tillades parterne at møde op og stille spørgsmål.

Generelt bør enhver anmodning indeholde sådanne oplysninger, som er nødvendige for bedømmelsen af, om den truer territorialstatens sikkerhed eller suverænitet og om den har traktathjemmel, samt for dens praktiske gennemførelse. De to ovennævnte konventioners krav svarer formentlig i store træk til, hvad der på denne baggrund altid må kræves, selvom anmodningen i stedet fremsættes med hjemmel i f.eks. civilproceskonventionerne eller helt uden hjemmel.

Egentlige formkrav stilles normalt ikke fra dansk side, men begæringen og oplysningerne bør så vidt muligt være indeholdt i samme dokument, jfr. actes et documents 1968 IV p 205, og i relation til Luxembourg gælder der – helt enestående – en formulartvang.

Der er endvidere ved et senere møde i en specialkomite under Haagerkonferencerne udarbejdet et forslag til en fakultativ formular.

## 6. Bevisoptagelse i udlandet
## 6.1. Henvendelse fra danske til udenlandske retlige myndigheder

Ifølge retsplejelovens § 342, stk. 1, kan en part, der ønsker bevis optaget i udlandet, anmode retten om på grundlag af hans oplysninger og i overensstemmelse med konventionerne at udfærdige en retsanmodning. For så vidt der ikke i en relevant traktat findes tilstrækkelig detaljerede regler om udfærdigelsen, synes dette ifølge side 126 i betænkning nr. 698/1973 om behandling af borgerlige sager forsætligt at være overladt til retternes frie afgørelse, idet det synes forudsat, at §§ 1-6 i 1897-loven er bortfaldet. Hjemmelen i § 342, stk. 2, til udstedelse af administrative retningslinier er ikke udnyttet, siden den blev indsat ved lov nr. 260 af 8. juni 1979.

Det har næppe praktisk betydning, om denne hjemmel kan udstrækkes til at omfatte 1932-bekendtgørelsen, hvis gyldighed syntes forudsat ved forarbejderne til den hidtidige § 296, jfr. Rt 1930-31A, sp 4892, idet bekendtgørelsen for så vidt angår danske anmodninger alene giver oplysninger om konventionernes regler og rette fremsendelsesvej samt den selvfølgelige regel, at overflødige dokumenter ikke bør medsendes. Af samme grund kan det heller ikke være afgørende, om den i justitsministeriets cirkulæreskrivelse af 15. maj 1961 (U) om direkte brevveksling med myndigheder i Norge og Sverige angående retshjælp givne instruks om udførlig angivelse af spørgsmålene til parter, sigtede, vidner eller andre har egentlig hjemmel i forhold til domstolene.

I almindelighed må domstolenes udfærdigelse og ekspedition af anmodningerne derfor alene være reguleret af de krav, som vedkommende territorialstat kan forventes at stille. (Der gælder ikke længere noget særligt krav til formen for rettens afgørelse, jfr. betænkning nr. 698/1973 a.st.). Om konventionernes regler henvises generelt til fremstillingen ovenfor under pkt. 5.1.-3. Opmærksomheden henledes navnlig på, at isoleret bevisoptagelse i medfør af § 343 i tilfælde, hvor sagsanlæg ikke påtænkes, ikke er omfattet af konventionerne.

Det kan ikke antages, at retsplejelovens § 342 giver domstolen en større rådighed

over retsanmodninger til udlandet end over bevisførelsen i almindelighed, og retten vil således alene under trussel om benyttelse af den processuelle fakultative skadevirkning i medfør af § 339, stk. 3, kunne opfordre en part til at fremsætte den ønskede begæring. Tilsvarende må det antages, at retten alene kan afslå at udstede en anmodning, såfremt det pågældende bevis kan nægtes ført, jfr. § 341, eller der ikke findes grundlag for en dertil nødvendig udsættelse af sagen, jfr. f.eks. UfR 1924.188Ø og UfR 1965.411H.

Om krav om sikkerhedsstillelse henvises til pkt. 9.2.

Såfremt retsanmodningen – som normalt, jfr. f.eks. UfR 1977.625H – indeholder en serie af spørgsmål, kan retten næppe med hjemmel i § 183, stk. 2, tilføje egne spørgsmål, idet forudsætningen for denne bestemmelse må være den traditionelle vidneafhøringssituation, hvor spontane spørgsmål fra retten kan blive foranlediget af parternes udspørgen, som retten ikke på forhånd kan kontrollere. Også dette må reguleres efter § 339.

Ønsker parterne at være repræsenteret ved og deltage i bevisoptagelsen, må retten i realiteten enten opgive sin kontrol med spørgsmålene, (hvilken dårligt kan udøves af en fremmed ret), eller udnytte en eventuel mulighed for selv at være repræsenteret. (I så fald vil grundsætningen i § 183, stk. 2, formentlig i relation til retsplejeloven muliggøre rettens deltagelse i afhøringen).

En eventuel begæring om benyttelse af en særlig fremgangsmåde må i øvrigt navnlig tage hensyn til metodens forenelighed med danske retsbegreber og dens egnethed til at skaffe tilstrækkeligt bevis. Opmærksomheden henledes navnlig på, at mange lande som udgangspunkt vil benytte »commissioners«.

## 6.2. Bevisoptagelse på anden måde

Retsplejelovens § 342 udelukker ikke, at der på anden måde skaffes bevis fra udlandet, jfr. § 344.

Oplysninger, som uden rettens medvirken er skaffet fra udenlandske myndigheder eller derboende personer, vil kunne benyttes som bevis, medmindre § 341 efter de sædvanlige overvejelser giver adgang til at afvise sådan bevisførelse, jfr. Smit a.st. p 55. Dette vil navnlig kunne være tilfældet, hvor kun den ene part har deltaget i fremskaffelsen af et berettende dokument, således at en da bekendt modpart er betaget adgangen til kontradiktion, men også muligheden for efterfølgende at gøre handlingen om i mere betryggende form vil spille ind ved afgørelsen, jfr. den kommenterede retsplejelov, I, p 365 ff med henvisninger. En udenlandsk myndigheds medvirken ved fremskaffelsen af beviset kan her tale for at tillade, at det føres, jfr. Hørlyck: Syn og skøn, p 59.

Udsættelse efter § 345 vil formentlig alene blive tilladt, såfremt parterne er enige om en bevisoptagelse, der ikke mere hensigtsmæssigt kan ske i medfør af § 342.

Søges bevis optaget ved hjælp af en dansk repræsentation i udlandet, kan rettens bistand muligvis (selvom der ikke er udtrykkelig lovhjemmel hertil), yderligere omfatte medundertegnelse eller lignende af henvendelsen til repræsentationen.

Bevisoptagelsen forudsætter efter den almindelige folkeret og konsularkonventionens art. 5, litra j, at territorialstaten ikke modsætter sig den. Det samme følger af Haagerkonventionerne, hvor det efter civilproceskonventionerne er almindeligt og efter bevisoptagelseskonventionen for så vidt angår processtatens borgere nødvendigt, at en sådan holdning tilkendegives ved en erklæring til Haagerkonferencernes permanente sekretariat. Erklæringer herom i henhold til bevisoptagelseskonventionen offentliggøres i lovtidende C. Dette gælder også for erklæringer i henhold til konventionens art. 16 om, at diplomater eller konsuler generelt eller efter konkret ansøgning vil kunne optage bevis. Sådanne tilladelser kan betinges af overholdelsen af særlige forskrifter, hvorom enkelte stater ligeledes har afgivet erklæring. Den dansk-britiske konventions art. 9 forudsætter, at beviset optages af en person, der er

beskikket dertil af den pågældende domstol.

I dansk ret savnes generel hjemmel til beskikkelse af en sådan commissioner, hvorfor den mulighed, som bevisoptagelseskonventionens art. 17 i nogle tilfælde giver herfor, ikke kan udnyttes. I praksis synes den dansk-britiske konventions regel at være blevet anvendt til »beskikkelse« af danske konsuler.

Et vidneudsagn eller lignende fremskaffes ifølge kapitel VIII, afsnit D, pkt. 2 og 3, i instruks for udenrigstjenesten ved, at personen anmodes om at indfinde sig på repræsentationen, hvor de angivne spørgsmål stilles og protokolleres sammen med svarene. Dette dokument undertegnes herefter af den pågældende og den danske repræsentant og tilbagesendes til rekvirenten. Stammer anmodningen ikke fra en dansk myndighed, kan repræsentationen søge at efterkomme den ved at rette skriftlig henvendelse herom til den pågældende og nøjes med at legalisere hans underskrift. I tilfælde af manglende reaktion eller nægtelse af at medvirke tilbagesendes anmodningen med oplysning herom.

Der kan, selvom territorialstaten i medfør af bevisoptagelseskonventionens art. 18 har erklæret sig villig til at medvirke, ikke benyttes nogen form for tvang, og det må antages, at retten heller ikke uden for den dansk-britiske konventions område vil benytte den processuelle fakultative skadevirkning, hvis den pågældende er part i sagen, jfr. actes et documents 1968 IV p 150.

Værdien af en konsulær bevisoptagelse, som ifølge bevisoptagelseskonventionens art. 15-16 alene kan ske til brug for verserende sager, vil i høj grad afhænge af, om afgivelse af en urigtig erklæring i praksis vil kunne sanktioneres i kraft af territorialstatens regler eller straffeloven.

## 7.    Frem- og tilbagesendelsesproceduren
### 7.1.  Den diplomatiske vej (udgangspunktet)
Staternes originære korrespondanceform er ifølge den almindelige folkeret den såkaldte »diplomatiske vej«, hvor processtatens ambassade i territorialstaten videregiver anmodningen til dennes udenrigsministerium,

jfr. actes et documents 1964 III p 75.

I princippet vil den diplomatiske vej for en dansk anmodning gå gennem justitsministeriet og udenrigsministeriet, men da territorialstaten normalt ikke stiller krav herom, sker fremsendelsen i praksis ofte direkte fra rekvirenten til den overordnede danske repræsentation i det pågældende land, jfr. Advokaten 1981 p 121, instruks for udenrigstjenesten, kapitel VIII, afsnit B, pkt. 1, og afsnit C, pkt. 3 og 4, samt actes et documents 1968 IV p 101. Samme metode vil normalt også kunne benyttes ved anmodninger til Danmark.

Den diplomatiske vej anvendes i almindelighed kun, hvor der ikke er traktathjemmel for fremsendelsen, men territorialstaten kan – som f.eks. Schweiz – ifølge civilproceskonventionernes art. 1 og 9 generelt kræve den benyttet. En sådan mulighed foreligger ikke ifølge de øvrige konventioner, (jfr. actes et documents 1964 III, p 91 f og 373), men rekvirenten kan ifølge forkyndelseskonventionens art. 9, stk. 2, under særlige omstændigheder benytte den diplomatiske vej.

Er anmodningen fremsendt ad diplomatisk vej, tilbagesendes sagen efter udførelsen ad samme vej, og alle konventionerne foreskriver, at eventuelle uoverensstemmelser løses på denne måde.

(I Danmark påføres den legaliserede stævningsmandsattest normalt justitsministeriets fremsendelsesskrivelse, medens justitsministeriets tilbagesendelsespåtegning anbringes efter udenrigsministeriets fremsendelsespåtegning).

### 7.2.  Civilproceskonventionerne og den dansk-britiske konvention
Ifølge civilproceskonventionernes art. 1 og 9 fremsendes anmodninger af processtatens konsul til en af territorialstaten udpeget myndighed, som tilbagesender dokumentation for udførelsen eller forsøget derpå til konsulen.

Denne såkaldte »konsulære vej« kan dog fraviges, såfremt processtaten kræver diplomatisk fremsendelse, jfr. pkt. 7.1., eller der

er truffet aftale om en anden fremsendelses-vej, jfr. pkt. 7.4. og 7.5.

Den konsulære vej benyttes også ved fremsendelse af anmodninger i medfør af den dansk-britiske konvention, jfr. dennes art. 3, stk. 1 og 8, stk. 3.

Danmark har som modtagende myndig-hed i de ovennævnte tilfælde udpeget den stedlige byret, for anmodninger om bevisopt-agelse i København dog justitsministeriet, som herefter videresender anmodningerne til Københavns byret.

(De øvrige lande, der er omfattet af den dansk-britiske konvention, har valgt at be-nytte en eller flere centrale myndigheder til modtagelsen).

Selvom det ofte – som f.eks. i actes et documents 1964 III p 15 og 75 – forudsættes, at konsulen har mod-taget anmodningen gennem processtatens udenrigsmi-nisterium, reguleres dette spørgsmål ikke af konventio-nerne, jfr. actes 1904 p 84, og danske rekvirenter kan henvende sig direkte til den overordnede repræsentation i den pågældende stat, jfr. bekendtgørelse nr. 167 af 20. maj 1932, afsnit II, (som dog på visse punkter er forældet), og instruks for udenrigstjenesten, kap. VIII, afsnit B, pkt. 3 b og c, samt afsnit C, pkt. 3 c.

## 7.3. Forkyndelses- og bevisoptagelseskonventionerne

Ifølge forkyndelses- og bevisoptagelseskon-ventionerne skal hver stat udpege en central myndighed, som kan modtage anmodninger-ne og lade forkyndelsen foretage, respektive videresende anmodningen om bevisoptagelse til den kompetente myndighed. Disse opga-ver varetages i Danmark af justitsministeri-et, og det fremgår af de øvrige landes tiltræ-delseserklæringer, hvilken central myndig-hed, der er udpeget. Et land kan have udpe-get alternative myndigheder, som processta-ten i stedet kan vælge at henvende sig til.

Ifølge forkyndelseskonventionerne bør (se actes et documents 1964 III p 87 og 371) tilbagesendelsen ske direkte fra den udføren-de myndighed til rekvirenten, idet erklærin-gen om det passerede dog af rekvirenten kan kræves medunderskrevet af den centrale

myndighed, såfremt den ikke er udstedt af denne eller en retlig myndighed. Danske er-klæringer udstedes og tilbagesendes af den pågældende domstol.

Beviskonventionen åbner formentlig lige-ledes mulighed for direkte tilbagesendelse, jfr. Bangert, Due og Philip i NTfIR 1971 p 328 f, men cfr. actes et documents 1968 IV p 167 f, 171 og 205.

Begge konventioner opretholder mulighe-den for at benytte konsulær fremsendelse, hvilket her i landet skal ske direkte til dom-stolene.

## 7.4. De særlige aftaler med de øvrige nordiske lande, Luxembourg, Vesttyskland og Østrig

Ifølge den nordiske overenskomst af 26. april 1974 om gensidig retshjælp, (jfr. bekendtgørelse nr. 100 af 15. september 1975), som supplerer forkyndelses- og bevis-optagelseskonventionerne i relation til Finland, Norge og Sverige og 1905-konventionen i relation til Island, fremsendes anmodninger om forkyndelses- og bevisopt-agelse direkte mellem de pågældende statsmyndigheder, hvilket her vil sige de danske domstole. (Oplysning om adressen på den rette nordiske myndighed kan fås ved henvendelse til rigspolitichefen, afdeling A, Interpol, Polititorvet 14, 1588 København V, telefon (01) 14 14 48, lokal 2401, jfr. cirkulæreskrivelse nr. 94 af 6. juli 1984 (M).

Danske domstoles anmodninger til Luxembourg sen-des ifølge art. 2, stk. 2, i bekendtgørelse nr. 20 af 25. januar 1912 direkte til statsprokurørerne ved distrikts-retterne i Luxembourg og Diekirch, som sammen med generalprokurøren ved overretten i Luxembourg er kompetent til at fremsende anmodninger til Danmark. Vore domstole kan ifølge art. 2, stk. 2, i bekendtgørelse nr. 15 af 29. januar 1932 ligeledes fremsende anmodnin-ger direkte til de tyske landsretspræsidenter. (Justitsmi-nisteriet sender med jævne mellemrum, senest den 29. november 1983, domstolene lister over de rette tyske myndigheder).

De tyske og luxembourgske domstole kan fremsende anmodninger til de danske, for så vidt angår anmodnin-ger om bevisoptagelse i København dog til justitsmi-nisteriet, som videresender dem, jfr. herved art. 2, stk. 1, i sidstnævnte bekendtgørelse og bekendtgørelse nr. 57 af 11. marts 1932.

Ifølge art. 1 i overenskomst af 8. november 1979 med Østrig om forenkling af 1954-konventionens ordning, jfr. bekendtgørelse nr. 84 af 17. august 1981, fremsen-des anmodninger om forkyndelse eller bevisoptagelse mellem de to landes justitsministerier.

### 7.5. Fremsendelse til inkompetent myndighed m.v.

Ifølge samtlige konventioner videresender en myndighed, som på grund af saglig inkompetence ikke kan udføre en ønsket bevisoptagelse, anmodningen til den rette myndighed. Det samme gælder ifølge den dansk-britiske konventions art. 3, stk. 4, for anmodninger om forkyndelse og ifølge de dansk-luxembourgske og dansk-tyske overenskomster i alle tilfælde af »lokal« (stedlig) inkompetence. Oversendelsen sker i overensstemmelse med det enkelte lands interne regler, jfr. udtrykkelig civilproceskonventionernes art. 12.

I dansk praksis sker sådan oversendelse til rette myndighed normalt, uanset om kompetencemanglen fremgår af de for afsenderen foreliggende oplysninger, eller den skyldes bopælskift hos en person, som skulle modtage et dokument eller afgive et vidneudsagn, jfr. ovenfor under 3.5.

I nogle tilfælde vil undskyldelige fejltagelser med hensyn til territorialstaten her i landet også blive korrigeret ved videresendelse til andre lande eller modtagelse af henvendelser, der af denne grund er videresendt derfra. Der er imidlertid ikke nogen pligt hertil, jfr. actes et documents 1964 III, p 200 f.

Den myndighed, hvorfra henvendelsen er modtaget, underrettes om videresendelsen.

Danske domstole, som modtager en begæring direkte fra en fremmed ret, kan uden traktathjemmel efterkomme den, såfremt der foreligger periculum in mora, jfr. justitsministeriets skrivelse nr. 340 af 20. oktober 1906 (M). Også andre landes interne regler kan hjemle lettere fremsendelse.

### 8. Sproget

### 8.1. Udgangspunktet for overvejelser vedrørende de sproglige krav

Et udslag af den almindelige folkerets regel om territorialstatens ret til at nægte udførelse af et ønsket processkridt er, at den kan vælge at kræve oversættelse af ethvert relevant dokument.

Kravet kan i princippet udstrækkes også til retshandlinger, der foretages af personer uden forbindelse med dens egne myndigheder, men kun den dansk-britiske civilproceskonventions art. 4, stk. 2, og art. 9, stk. 3, samt beviskonventionens art. 21, litra b, kræver oversættelse af det forkyndte dokument eller tilsigelsen til at afgive bevis for en diplomatisk eller konsulær repræsentant, medmindre modtageren er statsborger i processtaten. (Dette spørgsmål vil dog også blive inddraget i justitsministeriets overvejelser med hensyn til de i 2.2., 2.3. og 2.4. nævnte anmodninger).

Korrespondancen mellem den enkelte stats myndigheder indbyrdes kan altid ske på statens eget sprog, og det må antages, at også rene fremsendelsesskrivelser (traditionelt typisk på fransk eller engelsk) falder uden for reguleringen.

### 8.2. De interne danske krav til retsskridt i udlandet.

Ifølge retsplejelovens § 149 er retssproget dansk.

Efter reglens nærmere udformning og forarbejderne, jfr. p 57 i motiverne til proceskommissionens 1877-udkast samt Victor Hansen i Retsplejen ved Højesteret, p. 87, må det – også for så vidt angår anmodninger om retsskridt i udlandet – antages, at alle afgørelser og skriftlige meddelelser fra retten såvel som alle tilførsler til retsbogen ubetinget skal foreligge på dansk. Det samme gælder ifølge UfR 1976 980 V for processkrifterne. Derimod kan oversættelse af andre dokumenter undlades, når parterne er indforstået hermed, og retten tror sig det fremmede sprog mægtigt, hvorfor besvarelser af danske retsanmodninger ikke nødvendigvis skal oversættes.

Sker en forkyndelse ikke til brug for en dansk retssag, kan dokumentet ikke være omfattet af retsplejelovens § 149.

Dansk ret indeholder intet selvstændigt krav om, at et dokument forkyndes eller be-

vis optages på territorialstatens sprog. I mange tilfælde følger dette dog af henvisningerne i §§ 158 og 347 til de indgåede konventioner, men hvor territorialstaten inden eller udenfor konventionerne ikke kan eller vil kræve noget sådant, ligesom hvor processkridtet foretages med anden hjemmel, vil denne omstændighed ikke kunne medføre en egentlig ugyldighedsvirkning.

Bevisoptagelse må dog naturligvis ske på et sprog, der forstås af de deltagende, jfr. §§ 341 og 344, og retten vil endvidere f.eks. kunne tillægge den omstændighed, at en stævning er forkyndt i udlandet uden oversættelse, betydning for en afgørelse efter § 354, stk. 7.

(Den noget strengere formulering af kravene i instruks for udenrigstjenesten, kap. VIII, afsnit B 1 og C 2, synes principielt ikke at have hjemmel i dansk ret. Derimod bør der ved forkyndelser formentlig gøres bemærkning om modtagerens forståelse af dokumentet).

## 8.3. Konventionernes og traktaternes krav m.v.

Et dokument, der skal forkyndes i overensstemmelse med territorialstatens almindelige interne regler eller på en særlig i anmodningen angivet måde, skal ifølge den dansk-britiske konventions art. 3, stk. 3, være affattet på dennes sprog eller ledsaget af en oversættelse hertil. Det samme gælder ifølge civilproceskonventionens art. 3, medmindre andet er aftalt, og ifølge forkyndelseskonventionens art. 5, såfremt det kræves af territorialstaten.

(For så vidt angår den dansk-britiske konvention henledes opmærksomheden på, at henvendelse til de øvrige stater ikke altid kan ske på engelsk. En del lande har endvidere afgivet udtrykkelige erklæringer om krav efter forkyndelseskonventionens art. 5).

Såkaldt forkyndelse »uden tvang« (jfr. pkt. 3.3.) skal dog ifølge Haagerkonventionerne forsøges, selvom oversættelsen ikke foreligger.

Forkyndelseskonventionens formularer skal have standardtekst på engelsk eller fransk samt derudover eventuelt på processtatens sprog. De udfyldes på engelsk, fransk eller territorialstatens sprog. De andre nævnte konventioner tager ikke stilling til erklæringen om udførelsen, som må antages at kunne udfærdiges på territorialstatens sprog.

Anmodninger om bevisoptagelse skal ifølge civilproceskonventionernes art. 10 og den dansk-britiske konventions art. 8, stk. 2, være affattet på eller oversat til territorialstatens sprog, og tilbagesendelse af erklæringer må antages at kunne ske på samme sprog.

Ifølge bevisoptagelseskonventionens art. 4 skal territorialstaten som udgangspunkt modtage anmodninger på eller oversættelse til sit eget sprog, engelsk eller fransk, og det synes ifølge bemærkningerne forudsat, at tilbagesendelse sker på samme sprog, jfr. actes et documents 1968 IV p 206. Danmark vil ifølge en i medfør af art. 4, stk. 2 og 4, afgivet erklæring alene være forpligtet til at besvare retsanmodninger, der fremkommer på dansk, norsk, svensk eller engelsk, og besvarelsen kan alene kræves udformet på dansk. Herefter kan alle ikke fransk-talende lande nægte at modtage danske anmodninger på dette sprog, jfr. art. 33, hvorimod det kan forekomme noget tvivlsomt, om den danske erklæring om tilbagesendelsen helt eller delvis har samme retsvirkning for engelsksprogede anmodninger, eller om den blot medfører, at andre lande ikke kan forvente noget sådant fra Danmark, medens det modsatte fortsat er tilfældet, jfr. Bangert, Due og Philip i NTfIR 1971 p 330. (Den sidste løsning er formentlig den, der svarer bedst til praksis). De enkelte landes stilling hertil vil fremgå af tiltrædelseserklæringerne.

Den nordiske retshjælpsoverenskomst giver territorialstaten krav på udfærdigelse på eller oversættelse til dansk, norsk eller svensk af anmodningen, dog således at dokumenter affattet på andre sprog kan forkyndes for den, der frivilligt modtager dem, eller såfremt den udførende myndighed i øvrigt

finder det ubetænkeligt. Besvarelsen af anmodningen sker for så vidt angår forkyndelser altid på dansk, norsk eller svensk, medens dokumentation for bevisoptagelse også kan udfærdiges på finsk eller islandsk. I disse tilfælde kan processtaten dog kræve oversættelse til dansk, norsk eller svensk.

Ifølge den dansk-tyske forenklingsaftale (bekendtgørelse nr. 15 af 29. januar 1932 (A)) og den dansk-østrigske overenskomst (bekendtgørelse nr. 84 af 17. august 1981 (C)) kan anmodningerne udfærdiges på processtatens sprog.

Den dansk-tyske aftale giver ligesom den dansk-polske aftale (bekendtgørelse nr. 38 af 7. februar 1933 (A)) yderligere mulighed for uoversat fremsendelse af dokumenter, der skal forkyndes, (og i relation til Polen også af anmodninger) således at disse oversættes af territorialstaten på processtatens bekostning.

På samme måde behandles begæringer fra Luxembourg ifølge bekendtgørelse nr. 20 af 25. januar 1912.

Ifølge en aftale med Frankrig skal territorialstaten foretage gratis oversættelse af dokumenter, der fremsendes ad diplomatisk vej i sager, hvor processtaten har meddelt fri proces, jfr. bekendtgørelse nr. 167 af 20. maj 1932 (A).

Ifølge en aftale med Israel, jfr. bekendtgørelse nr. 100 af 28. november 1967 (C), skal alle processtatens dokumenter ledsages af en oversættelse til engelsk. (Om bevisoptagelse henvises nu til bevisoptagelseskonventionen).

Selvom en aftale ikke indeholder udtrykkelige bestemmelser om oversættelse af dokumenter, der modtages på et fremmed sprog, må det antages, at territorialstaten som udgangspunkt kan vælge at lade dette foretage, jfr. actes et documents 1968 IV p 109 og 206. Imidlertid modvirker noget sådant en hurtig udførelse, og meget kunne tyde på, at Haagerkonventionerne forpligter til ikke at afvente oversættelse af dokumenter, der skal forkyndes »frivilligt«, jfr. bl.a. actes et documents 1964 III p 201 ff. (Territorialstaten må altid have ret til at forlange klarhed med hensyn til formålet, jfr. ovenfor under pkt. 3.5. og 5.3.). Ordlyden af den nordiske retshjælpsoverenskomst tyder på det samme, når territorialstaten ikke kan kræve oversættelse, hvorimod det må forekomme særdeles tvivlsomt, om noget sådant følger af den dansk-israelske aftale.

De særlige problemer omkring flersprogede territorialstater er udtrykkelig løst ved erklæringer fra visse deltagerlande i den dansk-britiske konvention, og bevisoptagelseskonventionens art. 4, stk. 3, pålægger stater, som på grund af opdeling i sprogzoner alene vil modtage henvendelser på et bestemt sprog i hver af disse, at afgive en erklæring herom, jfr. Bangert, Due og Philip i NTfIR 1971 p 329. Civilproceskonventionerne lader den udførende myndigheds sprog være afgørende. Forkyndelseskonventionen synes at undgå en stillingtagen, jfr. actes et documents 1964 III p 222f, og Danmark har indgået en særlig aftale med Belgien, hvorefter dokumenter dertil kan fremsendes på dansk og oversættes på rekvirentens bekostning, jfr. cirkulæreskrivelse af 24. januar 1984 (U).

Med henblik på sikring af, at oversættelserne har en acceptabel kvalitet, har konventionerne fastsat regler om bekræftelse af deres rigtighed.

Dette foretages ifølge civilproceskonventionerne af en diplomatisk eller konsulær repræsentant for processtaten eller af en autoriseret translatør i territorialstaten, ifølge den dansk-britiske konvention af en konsulær repræsentant for processtaten og ifølge bevisoptagelseskonventionen af en diplomatisk eller konsulær repræsentant, en edsvoren translatør eller en hvilken som helst anden dertil kompetent person i en af staterne.

I forkyndelseskonventionen er der ingen udtrykkelige krav herom, og det afgørende må blive, at den anmodende myndighed lader begæringen omfatte oversættelsen, jfr. herved udtrykket »bekræftet« i den nordiske retshjælpsoverenskomst.

Den dansk-østrigske overenskomst tillader oversættelse ved en translatør i processtaten, (og tilsvarende aftaler var indgået med Israel, Tyskland og Luxembourg, jfr. nu forkyndelses- og beviskonventionerne).

Danske translatøroversættelser bør legaliseres i industriministeriet og derefter (indirekte) i udenrigsministeriet.

Opmærksomheden henledes på, at visse lande, der ikke er medlemmer af konventionerne, kræver oversættelser foretaget af derværende translatører. I nogle tilfælde kan det blive nødvendigt først at tilvejebringe en legaliseret oversættelse til et af hovedsprogene. (Sådanne sager bør drøftes med udenrigsministeriet, jfr. A. S. Madden og P. Zerman i Adv. 1981 p 121).

## 8.4. Forkyndelse i Danmark

Som følge af det ovenfor under pkt. 3.1. om hjemmelen til forkyndelse af udenlandske dokumenter i Danmark anførte reguleres dette ikke umiddelbart af retsplejelovens § 149. Den administrative praksis synes imidlertid udformet på en måde, som inden for konventionernes spillerum tilgodeser hensynene bag § 149, for så vidt de også gør sig gældende i disse sager.

Selvom der ikke er afgivet udtrykkelige erklæringer herom i relation til forkyndelseskonventionen, vil uoversatte dokumenter, således som det følger umiddelbart af civilproceskonventionerne og bekendtgørelse nr. 167 af 20. maj 1932, normalt alene blive søgt forkyndt »uden tvang« som hjemlet ved Haagerkonventionerne, jfr. ovenfor under pkt. 3.3. og Practical Handbook p 52. Reglerne modificeres dog af den nordiske retshjælpsoverenskomst, jfr. ovenfor under pkt. 8.3., samt muligvis af den dansk-israelske overenskomst.

Justitsministeriet vil sædvanligvis først forsøge frivillig forkyndelse af de uoversatte dokumenter og derefter om fornødent returnere dem med anmodning om oversættelse. Denne metode, der på grund af det danske forkyndelsessystems hurtighed synes i overensstemmelse med forkyndelseskonventionens ånd, kan dog ikke benyttes, såfremt der er anmodet om forkyndelse på en særlig måde, jfr. art. 5, stk. 2, jfr. stk. 1, litra b, hvorimod det under hensyn til bestemmelsens formulering ikke kan kræves, at der på formularen er anmodet om overlevering uden tvang.

Fremkommer anmodninger med hjemmel i forkyndelseskonventionen i medfør af dennes art. 9, (jfr. pkt. 7.3.), eller de bilaterale aftaler med Luxembourg eller Tyskland direkte til domstolene, synes bestemmelserne om oversættelse i bekendtgørelse nr. 167 af 20. maj 1932 analogt anvendelige, således at samme fremgangsmåde skal anvendes.

Bestemmelsen i bekendtgørelsen af 1932 om, at de efter civilproceskonventionerne fornødne oversættelser af udenlandske dokumenter tilvejebringes på rekvirentens bekostning, må fortolkes indskrænkende, så den i mangel af forudgående samtykke alene benyttes, hvor der i øvrigt er hjemmel for en sådan omkostningsfordeling, det vil sige i relation til Luxembourg, Polen og Vesttyskland, jfr. ovenfor under pkt. 8.3. og nedenfor under pkt. 9.1.

Retsanmodninger fra lande, der ikke har tiltrådt konventionerne, vil i praksis blive behandlet på nogenlunde samme måde, jfr. herved FOB 1977 p 455 og 1978 p 58.

I det omfang, hvori der kræves oversættelse, vil kravene om udfærdigelse og bekræftelse heraf blive fastholdt, og oversættelser, der er behæftet med væsentlige mangler, vil ikke blive godtaget.

## 8.5. Bevisoptagelse i Danmark

I overensstemmelse med retsplejelovens § 347 må det antages, at § 149 kan fraviges ved traktat, såfremt dette ikke vil stride mod grundlæggende danske retsprincipper.

Som det vil fremgå ovenfor under pkt. 8.3., er kravet om translatøroversættelse modificeret ved visse traktater, hvorimod retten ikke kan antages at være forpligtet til at skaffe sig et sådant kendskab til det fremmede sprog, der er benyttet med hjemmel i traktaten, at anmodningen kan efterkommes uden oversættelse. En sådan må om fornødent – normalt efter drøftelse med justitsministeriet – fremskaffes ex officio.

Afhøring af vidner vil i overensstemmelse med § 149, stk. 1, 3. pkt., kunne ske på et fremmed sprog, og dokumenter vil kunne fremlægges med hjemmel i stk. 2, 2. pkt., men såvel tilførsler til retsbogen som erklæringer m.v. fra retten bør foreligge på dansk.

Udenfor traktaternes område vil justitsministeriet efter praksis som udgangspunkt videresende anmodninger, der er formuleret på et skandinavisk sprog eller på et af hovedsprogene. I disse tilfælde må anmodningerne tilbagesendes, såfremt det ikke kan imødekommes ad dette grundlag, idet det af hensyn til omkostningerne må overlades til rekvirenten at sørge for oversættelse. Denne bør i så fald være underskrevet af den anmodende myndighed eller bekræftet af en translatør (eller eventuelt en konsulær repræsentant).

## 9. Bemærkninger vedrørende omkostningerne

### 9.1. Forkyndelse

De krav, der folkeretligt stilles til dokumenter, som forkyndes i udlandet, opfyldes normalt af processtaten, men kan ved hjemmel i visse aftaler opfyldes af territorialstaten på processtatens bekostning, jfr. ovenfor under pkt. 8.

Efter dansk ret vil det normalt påhvile rekvirenten at lade dokumentet oversætte, mangfoldiggøre og legalisere mv., jfr. herved retsplejelovens § 311, bekendtgørelse nr. 256 af 20. juni 1972 om forkyndelse, § 7 og justitsministeriets cirkulæreskrivelse af 24. januar 1984 (V).

En dansk rekvirents hæftelse for sådanne omkostninger, der folkeretligt påhviler processtaten, må som principielt udgangspunkt være uafhængig af, om de umiddelbart lægges ud af territorialstaten.

I danske retssager afholdes de egentlige forkyndelsesomkostninger derimod af statskassen, jfr. princippet i retsplejelovens § 165, stk. 2. Der kan indenfor konventionernes område alene blive tale om refusion til territorialstaten af dens omkostninger til de medvirkende embedsmænd eller til iagttagelse af særlige formkrav, der stilledes ved anmodningen.

Såfremt civilproceskonventionens formkrav er overholdt, kan der (uanset en eventuel senere ratifikation af forkyndelseskonventionen, jfr. dennes art. 23) mellem de deltagende lande i beneficierede sager kun kræves refusion af udgifter af den sidstnævnte type. I øvrigt er deltagerlandene, som det blandt andet fremgår af deres erklæringer – eventuelt under forbehold af gensidighed – tilbageholdende med at kræve refusion.

### 9.2. Bevisoptagelse

I overensstemmelse med retsplejelovens § 311 påhviler omkostningerne ved bevisoptagelse i udlandet til brug for en dansk retssag den interesserede part. Der kan ifølge § 342, 2. pkt. afkræves ham sikkerhedsstillelse for disse omkostninger (i praksis navnlig for udgifterne ved en folkeretligt fornøden oversættelse og legalisering af anmodningen, territorialstatens refusionskrav og omkostningerne ved en eventuel oversættelse af resultaterne af bevisoptagelse, jfr. § 149), men ikke for modpartens udgifter på grund af bevisoptagelsen, jfr. UfR 1975, 666V og 1979.696Ø.

Territorialstaten kan afkræve den begærende myndighed udgifter ved oversættelser, der med hjemmel i en generel eller konkret aftale er foretaget for processtatens regning. Herom henvises til pkt. 8.3., bevisoptagelseskonventionens art. 4, stk. 3, og den nordiske retshjælpsoverenskomsts art. 4, stk. 2.

For så vidt angår udførelsen af anmodningen hjemler alle konventionerne dækning af udgifter til sagkyndige vidner – herunder syns- og skønsmænd samt tolke – til gennemtvingelse af vidnepligten og til efterkommelse af begæringer om en særlig fremgangsmåde. Almindelig vidnegodtgørelse, (jfr. retsplejelovens § 188) kan kræves dækket ifølge den dansk-britiske konvention og civilproceskonventionerne, men ikke ifølge beviskonventionens hovedregel.

Dersom en stat på grund af et forfatningsmæssigt behov herfor i medfør af beviskonventionens art. 26 rejser krav om refusion af udgifterne til forkyndelse af vidneindkaldelser, almindelige vidnegodtgørelser og omkostninger vedrørende retsbogsudskrifter, udsætter den sig for en massiv gengældelse fra alle de andre stater.

Denne konvention tager derimod lige som den dansk-britiske højde for »common law«-

landenes særlige regler ved at hjemle refusion af vederlag til en af territorialstatens myndigheder udpeget commissioner, i bevis-konventionens tilfælde dog kun såfremt anmodningen er fastholdt efter underretning om de omtrentlige omkostninger.

Deltagerne i civilproceskonventionerne kan ved begæringer i medfør heraf kun kræve refusion af udbetalinger til vidner m.v. samt af udgifter ved en særlig fremgangsmåde.

Ved bevisoptagelse i Danmark skal der som udgangspunkt betales retsafgift efter retsafgiftslovens § 14, men i medfør af lovens § 68 kan justitsministeriet fravige dette ved traktatbestemmelser eller i øvrigt under forudsætning af gensidighed.

Opstår der et praktisk behov for oversættelse af en anmodning, som med traktathjemmel er fremsendt hertil på et fremmed sprog, må omkostningerne herved udredes af statskassen.

### 9.3. Visse særaftaler

Aftaler, der begrænser territorialstatens krav på omkostningsrefusion, er indgået med de nordiske lande, Frankrig, Luxembourg, Vesttyskland og Østrig.

### 10. Afslutning

Som det vil være praktikere bekendt, er den danske juridiske litteratur særdeles kortfattet i sin omtale af de internationale processkridt. Dette skyldes formentlig navnlig, at de enkelte problemer ofte må ses i både en folkeretlig og en processuel sammenhæng.

I det forudgående har jeg søgt at fremdrage, systematisere og besvare nogle af emnets mere iøjnefaldende spørgsmål.

Tilbage står imidlertid, at en autoritativ behandling af disse problemer bliver stadig mere påkrævet, efterhånden som betydningen af det internationale samkvem og dermed også de internationale processkridt vokser.

Emnet fortjener større opmærksomhed i fremtiden.



I, Lene Tønnesen, hereby certify that the attached document, translated from Danish to English, to the best of my knowledge and belief, is a true, accurate, and complete translation of an extract of the following document:

- International forkyndelse og bevisoptagelse i almindelige borgerlige retssager (extract from p. 134, middle of first column)

9 August 2021



Gorrissen Federspiel