UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION,<br><br>                                 Plaintiff,<br><br>v.<br><br>CASPER MIKKELSEN, a/k/a "Carsten Nielsen, a/k/a "Brian Thomson, "a/k/a "Thomas Jensen" and a/k/a "Casper Muller,"<br>                                 Defendant. | Case No. 1:20-cv-03833  (JPC)<br><br>**DECLARATION OF JAMES G. WHEATON IN SUPPORT OF PROPOSED FINAL JUDGMENT BY DEFAULT**<br><br>ECF Case |

I, James G. Wheaton, declare, pursuant to 28 U.S.C. § 1746, under penalty of perjury, the following:

### I.   INTRODUCTION

1. I am a Senior Trial Attorney with the Division of Enforcement of the Commodity Futures Trading Commission, and I am counsel of record for Plaintiff Commodity Futures Trading Commission (the "Commission") in the above-captioned matter.

2. The Commission has filed a complaint against defendant Casper Mikkelsen, a/k/a "Carsten Nielsen," a/k/a "Brian Thomson," "a/k/a "Thomas Jensen" and a/k/a "Casper Muller" ("Casper Mikkelsen," "Mikkelsen," or "Defendant Mikkelsen"), which Defendant

Mikkelsen has failed to answer or otherwise respond (the "Complaint"). Accordingly, the Commission now seeks default judgment against Defendant Mikkelsen.

3. I make this declaration pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure ("FRCP"), Rule 55.2(b) of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, Rule 16.3(b) of the Electronic Case Filing Rules & Instructions for the Southern District of New York ("ECF Rules"), and Rule 3.F. of this Court's Individual Practices, in support of Plaintiff's Motion in Support of Proposed Final Judgment by Default, Permanent Injunction, Civil Monetary Penalties, and Other Statutory and Equitable Relief Against Casper Mikkelsen ("Default Judgment").

## II. PROCEDURAL HISTORY

4. The Commission filed the Complaint against Defendant Mikkelsen on May 18, 2020. (ECF No.1, the Complaint ("Compl."); (Declaration of Judith M. Slowly in Support Motion for Proposed Final Judgment by Default, "Slowly Default Decl." ¶ 2, 8, Ex. 2).

5. On June 29, 2020, Plaintiff sent a copy of the Amended Summons (ECF No. 17), and the Complaint (ECF No. 1), through DHL International ("DHL"), to Casper Muller, Mikkelsen's new legal name, at his address in Kolding, Denmark ("Denmark Address") (ECF No. 22, Declaration of Xavier Romeu-Matta in support of Certificate of Service with attachments); (Slowly Default Decl. ¶ 7).

6. On January 21, 2021 Plaintiffs moved for default judgment. On August 27, 2021, the Court denied without prejudice the CFTC's motion for default judgment "without prejudice to refiling in the event Defendant fails to appear after proper service of the Summons and Complaint pursuant to Rule 4(f)." The Court "grant[ed] the CFTC an additional ninety days to serve Defendant with a copy of the Summons and Complaint," and

2

advised that "[i]f additional time [was] needed for service, via Denmark's Central Authority or other means authorized by Rule 4(f), the CFTC may move for a further extension." *See* Opinion and Order, p. 9. (ECF No. 54).

### III. SERVICE OF THE AMENDED SUMMONS AND COMPLAINT

7. As described below, Plaintiff served Defendant under FRCP 4(f)(1) by serving Defendant through Denmark's Ministry of Justice in compliance with Article 5 of the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents (the "Hague Convention" or "Convention") and Danish law.[1]

8. Under Article 5 of the Hague Convention, the Central Authority of a receiving state shall serve the document or shall arrange for it to be served "by a method prescribed by its internal law for the service of documents in domestic actions upon persons who are within its territory." *See* 20 U.S.T. 361 (Hague Convention); *see also* Hague Conference on Private International Law ("HCCH") website, available at: https://www.hcch.net/en/instruments/conventions/full-text/?cid=17 (last visited Dec. 16, 2021). "The document may always be served by delivery to an addressee who accepts it voluntarily. *Id*. Then, under Article 6, "[t]he Central Authority of the State addressed or any authority which it may have designated for that purpose, shall complete a certificate in the form of the model annexed to the [Hague Convention]." *See* Article 6 of the Hague Convention. Here, Plaintiff contacted the Central Authority of the receiving State—the Danish Ministry of Justice—and on September 29, 2021, as instructed by the Central

---

[1] Fed. R. Civ. P. 4(f) states that "unless federal law provides otherwise, an individual other than a minor, an incompetent person, or a person whose waiver has been filed-may be served at a place not within any judicial district of the United States: (1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents...."

Authority, sent true, accurate, and certified translations of the Amended Summons and Complaint (translated into Danish, as was suggested, but not required by the Central Authority) to the Danish Ministry of Justice together with a completed model form request required by Article 3 of the Hague Convention. (ECF Nos. 57, 57-1).

9. On November 17, 2021, the Ministry of Justice notified Plaintiff by email that the Amended Summons and Complaint were served on Defendant on October 19, 2021, and attached a copy of the certificate of service ("Certificate'), which was issued by the Court of Kolding in Denmark in the form required by Article 6 of the Convention. The Certificate states the Defendant was served in accordance with Danish law by "digital transmission" pursuant to Chapter 17 of the Danish Administration of Justice Act and that the Amended Summons and Complaint were "received voluntarily." *Id*. Courts in this district and elsewhere have found that a completed certificate of service is prima facie evidence that service was made in compliance with the Convention. *See, e.g., Perish v. Petersen*, No. 15 Civ. 1414 (LGS), 2015 WL 5321673 at *6-7 (S.D.N.Y. 2015) (service on a Danish individual was effective where plaintiff received a certificate of service from the Central Authority of Denmark); *see also Northrup King v. Compania Productora Semillas*, 51 F. 3d 1383, 1390 (8th Cir., 1995) ("The Spanish Central Authority's return of a completed certificate of service is prima facie evidence that the Authority's service [on a party] was made in compliance with the Convention.").

10. Thus, Defendant was served, consistent with the Hague Convention and Danish law, on October 19, 2021.

11. On November 23, 2021, Plaintiff filed with the Court a Certificate of Service of the Amended Summons and Complaint on Defendant Mikkelsen. (ECF Nos. 57, 57-1).

## IV. ISSUANCE OF CERTIFICATE OF DEFAULT

12. On December 10, 2021, the Clerk of the United Stated District Court for the Southern District of New York (the "Clerk") entered a Certificate of Default against Defendant (ECF No. 65, Certificate of Default); (Slowly Default Decl. ¶ 9, Ex. 3).

13. In the Certificate of Default, the Clerk certified that this action against Defendant Mikkelsen was commenced on May 18, 2020; that on October 19, 2021 a copy of the summons and complaint was served on Defendant Mikkelsen in compliance with Article 6 of the Hague Convention and Chapter 17 of the Danish Administration of Justice Act; that a certificate of service was filed on November 23, 2021; that the docket entries indicate that the defendant has not filed an answer or otherwise moved with respect to the complaint; and the default of the Defendant was noted. (ECF No. 65, Certificate of Default); (Slowly Default Decl. ¶ 9, Ex. 3).

14. On December 15, 2021, Plaintiff filed with the Court a Proof of Service that on December 10, 2021, Plaintiff mailed a letter-envelope with a copy of the Clerk's Certificate of Default to Defendant and that the letter-envelope was delivered to Defendant's Denmark Address on December 14, 2021. (ECF No. 66).

15. To date, Defendant Mikkelsen has not answered, pleaded, or otherwise defended against the Commission's Complaint, has also not made an appearance in this case, and counsel of record for the Commission have received no communication of any kind from Defendant. (Slowly Default Decl. ¶¶ 10, 11).

16. Defendant Mikkelsen's deadline to file an answer has not been extended because he never submitted any request for an extension. *Id.*

17. Mikkelsen has not submitted any pre-motion letter relating to a motion to dismiss as required by Rule 6 of Judge Cronan's Individual Rules and Practices in Civil Cases. *Id*.

18. Casper Mikkelsen failed to appear or answer the Complaint within the time permitted by Fed. R. Civ. P. 12(a)(1).

## V. DEFAULT JUDGMENT IS APPROPRIATE

### A. This Court should enter default judgment because the Defendant has not pleaded or defended in this action

19. FRCP 55 authorizes entry of default and default judgment where a defendant "has failed to plead or otherwise defend." Fed. R. Civ. P. 55(a), (b). When a defendant has failed to respond to an action, the Court is ordinarily justified in entering a judgment against the defaulting party. *Bermudez v. Reid*, 733 F.2d 18, 21 (2d Cir. 1984). Entry of a judgment by default is within the sound judicial discretion of the Court under FRCP 55(b). *See Shah v. N.Y. State Dep't of Civil Serv.*, 168 F.3d 610, 615 (2d Cir. 1999).

20. Here, since Defendant Casper Mikkelsen has been served with the Amended Summons and Complaint and has failed to plead, otherwise defend, appear in this action or respond in any way to this action, FRCP 55 is satisfied and this Court is justified in entering a Default Judgment against Defendant Mikkelsen and should use its judicial discretion to do so under these facts and circumstances. (Slowly Default Decl. ¶¶ 2, 10, 11).

### B. The well-pleaded allegations establish that Mikkelsen violated the Commodity Exchange Act and CFTC Regulations

21. Upon a defendant's default, the well-pleaded factual allegations of the Complaint, except those relating to the amount of damages, will be taken as true and

6

establish a defendant's liability. *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981). A factual allegation will be deemed not well-pleaded only in "very narrow, exceptional circumstances," such as if the allegation is "made indefinite or erroneous by other allegations in the same complaint," "contrary to facts of which the court will take judicial notice," "not susceptible of proof by legitimate evidence," or "contrary to uncontroverted material in the file of the case." *Trans World Airlines, Inc. v. Hughes*, 308 F. Supp. 679, 683 (S.D.N.Y. 1969), *aff'd as modified*, 449 F.2d 51 (2d Cir. 1971), *rev'd on other grounds*, 409 U.S. 363 (1973).

22. Here, the well-pleaded allegations of the Complaint, taken as true, establish Mikkelsen's liability in violating the Commodity Exchange Act 7 U.S.C. §§ 1-27 (2018) (the "Act"), and the Regulations promulgated thereunder, 17 C.F.R. Pt. 1-190 (2020) ("Regulations"), as charged in Counts I, II and III the Complaint. (Compl. ¶¶ 42-61); *Au Bon Pain Corp.,* 653 F.2d at 65.

### 1. The well-pleaded allegations show that Mikkelsen operated a Ponzi scheme

23. Mikkelsen operated a classic Ponzi scheme. (Compl. ¶¶ 4, 26, 34). Beginning in at least 2015, Mikkelsen engaged in a fraudulent scheme to solicit and misappropriate money from 106 individuals and entities ("clients") who invested their funds with an alleged company called GNTFX to trade retail leveraged or margined off exchange foreign currency contracts ("forex'). (Compl. ¶ 1) (Slowly Default Decl. ¶¶ 6a, 6d, 8, Ex. 2). While Mikkelsen promised clients that he would use his discretion to trade forex on their behalf—and convinced 106 clients to invest $1,536,782.47 and instead of investing those funds as promised, he misappropriated funds for his personal use and as is typical in a Ponzi scheme,

Mikkelsen directed that certain money be sent to clients, which was paid from other client deposits. (Compl. ¶ 1,4, 26, 34); (Slowly Default Decl. ¶ 6, Ex 1).

24. Under this scheme, Mikkelsen created a website for GNTFX that contained material omissions and misrepresentations (Compl. ¶¶ 3, 14-21), he provided false historical trading information to clients and prospective clients (Compl. ¶¶ 22-25), and he created false account statements for clients and prospective clients (Compl. ¶¶ 29-33). Clients were directed to send funds to bank accounts in Colorado, Latvia and Portugal as well as to an American ecommerce company; none of the funds sent to these locations were used for forex trading. (Compl. ¶¶ 26-28).

25. Clients invested $1,536,782.47 for the purposes of trading forex and routinely requested their funds be withdrawn. (Compl. ¶¶ 2, 34), (Slowly Default Decl. ¶ 6a, 6b, Ex. 1.) By June 2017, clients stopped receiving any funds from GNTFX, clients lost a total of $1,191,286.87 pursuant to this scheme, and Mikkelsen misappropriated client funds for his use. (Compl. ¶¶ 4, 36); (Slowly Default Decl., ¶ 6a, 6c-d, Ex. 1).

**2. The well-pleaded allegations establish that Mikkelsen committed fraud and registration violations**

26. Mikkelsen is liable, as set forth in the Complaint for committing fraud in connection with forex transactions (Count I of the Complaint), failing to register as a commodity trading advisor (Count II), and committing fraud while acting as a commodity trading advisor ("CTA") (Count III).

3. **The well-pleaded allegations establish that Mikkelsen committed fraud in violation of 7 U.S.C. § 6b(a)(2)(A), (B), and (C) (Fraud in Connection with Commodity for Future Delivery) and 17 C.F.R. § 5.2 (b) (Fraud in Connection with Forex Transaction) (Count I)**

27. The Complaint establishes that Mikkelsen violated Section 4b(a)(2)(A), (B), and (C) of the Act, 7 U.S.C. § 6b(a)(2)(A), (B), and (C) (2018), and Commission Regulation 5.2, 17 C.F.R. § 5.2 (b) (2020), which prohibit fraud in connection with forex transactions. (Compl. ¶¶ 42-49).

   a. **The well-pleaded allegations establish that Mikkelsen committed fraud in connection with forex in violation of 7 U.S.C. § 6b(a)(2)(A), (B), and-(C)**

28. 7 U.S.C. § 6b(a)(2)(A), (B), and-(C), makes it unlawful:

for any person, in or in connection with any order to make, or the making of, any contract for sale of any commodity for future delivery . . . that is made, or to be made, for or on behalf of, or with, any other person, other than on or subject to the rules of a designated contract market – (A) to cheat or defraud or attempt to cheat or defraud the other person; (B) willfully to make or cause to be made to the other person any false report or statement or willfully to enter or cause to be entered for the other person any false record; [or] (C) willfully to deceive or attempt to deceive the other person by any means whatsoever in regard to any order or contract or the disposition or execution of any order or contract, or in regard to any act of agency performed, with respect to an order or contract for or in the case of paragraph (2) . . . with the other person.

Under Section 2(c)(2)(C)(iv) of the Act, 7 U.S.C. § 2(c)(2)(C)(iv) (2012), Section 4b(a)(2) of the Act, 7 U.S.C. § 6b(a)(2) (2018), applies to Mikkelsen's forex[2] transactions "as if" they were a contract of sale of a commodity for future delivery. (Compl. ¶ 44).

29. To establish that Defendant Mikkelsen cheated, defrauded and willfully deceived clients and knowingly made false material statements, a complaint must show that a defendant: (1) made misrepresentations, misleading statements, and/or deceptive

9

omissions (2) that were material and (3) acted with scienter. *See, e.g., CFTC v. Highland Stone Capital Mgmt.*, LLC, No. 11-5209 (KBF), 2013 WL 4647191, at *15 (S.D.N.Y. Aug. 29, 2013) (*citing Saxe v. E.F. Hutton & Co., Inc.*, 789 F.2d 105, 109 (2d Cir.1986)).

30. Here, the well-pleaded allegations summarized above establish that Defendant Casper Mikkelsen cheated, defrauded, and willfully deceived clients and knowingly made false material statements. The Complaint alleges that, among other things, Mikkelsen made or caused to be made a website containing false statements about the nature of his business (Compl. ¶¶ 14-21), false performance histories (Compl. ¶¶ 22-25), and false account statements (Compl. ¶¶ 29-33). False statements about the nature of the business, the actual returns of investments, and the actual amount contained in client accounts were material— and because he caused false statements to be made, Mikkelsen necessarily acted with scienter when he created them. *See, e.g. CFTC v. Int'l Fin. Servs., Inc.*, 323 F. Supp. 2d 482, 501 (S.D.N.Y. 2004) ("[M]isrepresentations concerning profit and risk go to the heart of a customer's investment decision and are therefore material as a matter of law." (*quoting CFTC v. Noble Wealth Data Info. Servs., Inc.*, 90 F. Supp. 2d 676, 686 D. Md. 2000), *aff'd in part, vacated in part sub nom. CFTC v. Baragosh*, 278 F.3d 319 (4th Cir. 2002))).

### b. The well-pleaded allegations establish that Mikkelsen committed fraud in connection with retail forex transactions in violation of 17 C.F.R. § 5.2(b)

31. 17 C.F.R. § 5.2(b) provides that it shall be unlawful for any person, by use of the mails or by any means or instrumentality of interstate commerce, directly or indirectly, in or in connection with any retail forex transaction: (1) to cheat or defraud or attempt to cheat or defraud any person; (2) willfully to make or cause to be made to any person any false report or statement or cause to be entered for any person any false record; or (3)

willfully to deceive or attempt to deceive any person by any means whatsoever. 17 C.F.R. § 5.2(b) (2020). (Compl. ¶ 45).

32. The same fraudulent conduct discussed above that violates Section 6b, including Mikkelsen's misrepresentations by email, also violates 17 C.F.R. § 5.2(b) as retail forex fraud. *See U.S. Commodity Futures Trading Comm'n v. Wright*, No. 17 CV 4722-LTS-DCF, 2017 WL 6437055, at *3 (S.D.N.Y. Dec. 7, 2018) (finding, that conduct that violated Section 6b also violated 17 C.F.R. § 5.2(b) if communicated through mail, email, or telephone); *U.S. Commodity Futures Trading Comm'n v. iGlobal Strategic Mgmt., LLC*, No. 12 CV 6574 BSJ, 2012 WL 6930308, at *4 (S.D.N.Y. Nov. 19, 2012). Thus, the well-pleaded facts in the Complaint, including Mikkelsen's misrepresentations, omissions, and false statements, through the use of mails and any means or instrumentality of interstate commerce, including by email, establish that Mikkelsen violated 17 C.F.R. § 5.2(b). (Compl. ¶¶ 45-49).

### 4. The well-pleaded allegations establish that Mikkelsen failed to register as a Commodity Trading Advisor (Count II)

33. The well-pleaded allegations of the Complaint establish that Mikkelsen did not register as a CTA as he was legally required to do, and thus violated Section 7 U.S.C. 6m(1) (2020)), and Commission Regulation 5.3(a)(3), 17 C.F.R. § 5.3(a)(3) (2019). (Compl. ¶¶ 37-41).

#### a. The well-pleaded allegations establish that Mikkelsen failed to register as a Commodity Trading Advisor in violation of 7 U.S.C. 6m(1)

34. 7 U.S.C. 6m(1) makes it unlawful for any CTA to make use of the mails or any means or instrumentality of interstate commerce in connection with its business as a CTA unless registered with the Commission. (Compl. ¶¶ 51-53).

35. The Complaint alleges that that Mikkelsen acted as a CTA, but did not register with the Commission as a CTA. (Compl. ¶¶ 37-41). The Complaint further alleges that Mikkelsen made use of the mails or any means of interstate commerce in connection with his business as a CTA, in that he controlled the GNTFX Email Addresses and the Flipsidefx Email address and used these email addresses to advise clients and manage and purport to trade forex on their behalf. (Compl. ¶¶ 21, 23, 37-41).

36. Thus, the allegations of the Complaint, here deemed admitted, establish that Mikkelsen never registered as a CTA, acted as an unregistered CTA, and made use of the mails or any means or instrumentality of interstate commerce in connection with its business as a CTA, in violation of 7 U.S.C § 6m(1).

### c. The well-pleaded allegations establish that Mikkelsen failed to register as a Commodity Trading Advisor in violation of 17 C.F.R. § 5.3(a)(3)

37. The Complaint also establishes that Mikkelsen violated 17 C.F.R. § 5.3(a)(3) by exercising discretionary trading authority over retail forex customers and failing to register as a CTA. 17 C.F.R. § 5.3(a)(3) (2020). CTAs are defined, subject to an inapplicable exemption described below in paragraph 38, as "any person who exercises discretionary trading authority or obtains written authorization to exercise discretionary trading authority over any account for or on behalf of any person…., in connection with retail forex transactions." Section 1a(18) of the Act, 7 U.S.C. § 1a(18) (2018).

38. The complaint alleges that Mikkelsen acted as a CTA, without being registered, by exercising discretionary trading authority over client accounts. Clients, for example, set up accounts at GNTFX and provided GNTFX with a trader code for Casper Mikkelsen that authorized him to execute trades on their behalf. (Compl. ¶ 39).

39. As noted above, if the Defendant exclusively advises certain statutorily-defined high net worth individuals ("Eligible Contract Participants" or "ECPs"), such registration is not required. 7 U.S.C. § 1a(18) (2018). The Complaint, however, alleges such exemption does not apply since many of the clients in this fraud were not ECPs. (Compl. ¶ 40). Accordingly, Mikkelsen was required to register as a CTA and failed to do so.

### 5. The well-pleaded allegations establish that Mikkelsen committed fraud while acting as a Commodity Trading Advisor in violation of 7 U.S.C. Section 6*o*(1) (Count III)

40. 7 U.S.C. Section 6*o*(1)(A) makes it unlawful for a CTA by "use of the mails or any means or instrumentality of interstate commerce, directly or indirectly, to employ any device, scheme, or artifice that defrauds any participant or prospective participant." 7 U.S.C. § 6*o*(1)(A) (2012). Likewise, Section 6*o*(1)(B) makes it unlawful for a CTA, to engage "in any transaction, practice, or course of business that operates as a fraud or deceit" upon any client or prospective client. 7 U.S.C. § 6*o*(1)(B). Unlike Sections 6b(a) and 6*o*(1)(A), the language of Section 6*o*(1)(B) does not require scienter. *See, e.g., Commodity Trend Serv., Inc. v. CFTC*, 233 F.3d 981, 993 (7th Cir. 2000); *Messer v. E.F. Hutton & Co.*, 847 F.2d 673, 678-79 (11th Cir. 1988). Further, sections 6*o*(1)(A) and (B) apply to CTAs, and their associated persons, whether registered, required to be registered, or exempt from registration. *See CFTC v. Vartuli*, 228 F.3d 94, 103 (2d Cir. 2000); *Skorupskas*, 605 F. Supp. at 932-33.

41. The same fraudulent conduct described above and in the Complaint (i.e., Mikkelsen's misappropriation, misrepresentations, omissions, and false statements) that violates Section 6b, including Mikkelsen's misrepresentations by email, also violates Section 6*o*(1). *See Stotler & Co. v. CFTC*, 855 F.2d 1288, 1290-91 (7th Cir. 1988);

13

Skorupskas, 605 F. Supp. at 932-33. Mikkelsen engaged in this conduct as a CTA by the use of the mails or other means or instrumentalities of interstate commerce by sending false or misleading information through email, social media, and websites. (Compl. ¶¶ 15, 21-23, 26, 29). Thus, the well-pleaded facts in the Complaint establish that Mikkelsen violated Section 6*o*(1) of the Act.

## VI. RELIEF REQUESTED

42. Plaintiff respectfully seeks permanent injunctive and monetary relief, including restitution and a civil monetary penalty ("CMP") as set forth in the [Proposed] Final Judgment by Default, Permanent Injunction, Restitution, Civil Monetary Penalties, and Other Statutory and Equitable Relief Against Defendant Casper Mikkelsen, a/k/a "Carsten Nielsen," a/k/a "Brian Thomson," a/k/a "Thomas Jensen" and a/k/a "Casper Muller," to be filed separately under ECF Rule 16.3(b).

43. An inquest into damages is unnecessary if affidavits or documentary evidence provided to the Court are used to determine the appropriate sum of damages. *Brogden v. Bize*, 2014 WL 77479 at *2 (S.D.N.Y. Jan. 8, 2014) (*citing Cement & Concrete Workers Dist. Council v. Metro Found Contractors, Inc.,* 699 F.3d 230, 234 (2d Cir. 2012); *see also CFTC v. Efrosman*, 2007 WL 2125775 (S.D.N.Y. Mar. 27, 2007); *Trs. Of the Operative Plasters and Cement Mason's Int'l Ass'n et al. v. Mimosa Int'l Ltd.*, 2013 WL 1718913, at *3 (S.D.N.Y.) ("an inquest is unnecessary. . . where the amount of damages is liquidated or susceptible of mathematical computation" (internal quotation and citation omitted)); *see also Boritzer v. Calloway*, 2013 WL 311013, at *14 (S.D.N.Y.) (inquest on damages unnecessary where plaintiff's damages are a sum certain); *CFTC v. 4X Solutions, Inc.*, No. 13-cv-2287, 2015 WL 9943241, at *2 (S.D.N.Y. Dec. 28, 2015) (citations omitted) (report

and recommendation) (evidentiary hearing as to damages "is unnecessary so long as (1) the Court has determined the proper rule for calculating damages and (2) the plaintiff's evidence establishes, with reasonable certainty, the basis for the damages specified in the default judgment.").

### A. A Permanent Injunction is appropriate.

44. Unlike private actions, which are rooted in the court's equity jurisdiction, Commission suits for injunctive relief are creatures of statute. *See* Section 6c(a) of the Act, 7 U.S.C. § 13a-1(a) (2012). The statutory injunctive relief in 7 U.S.C. § 13a-1(a) is remedial in nature, and is designed to prevent injury to the public and to deter future illegal conduct. "The Commission, like the SEC in the securities area, is the 'statutory guardian' entrusted with the enforcement of the congressional scheme for safeguarding the public interest in commodity futures markets." *CFTC v. British Am. Commodity Options Corp.*, 560 F.2d 135, 142 (2d Cir. 1977) (*quoting SEC v. Mgmt. Dynamics, Inc.*, 515 F.2d 801, 808 (2d Cir. 1975)). For these reasons, restrictive concepts ordinarily associated with private litigation, such as proof of irreparable injury or inadequacy of other remedies, are inapplicable. *See CFTC v. Hunt*, 591 F.2d 1211, 1220 (7th Cir. 1979); *British Am. Commodity Options Corp.*, 560 F.2d at 141-42.

45. The Commission is entitled to injunctive relief upon a showing that a violation has occurred and that there is a reasonable likelihood of future violations. *British Am. Commodity Options*, 560 F.2d at 141; *see also SEC v. Aaron*, 605 F.2d 612, 623 (2d Cir. 1979) (noting that the "critical question in determining whether the public interest requires the imposition of a permanent injunction is 'whether there is a reasonable likelihood that the wrong will be repeated'") (internal quotations omitted). In determining whether a

"reasonable likelihood" of future violations exists, courts generally consider the egregiousness of the defendant's actions; the isolated, recurrent, or systematic nature of the violations; the degree of scienter involved; the defendant's recognition of the wrongfulness of the conduct; and the likelihood that the defendant's customary business activities will present opportunities for future violations. *See Mgmt. Dynamics*, 515 F.2d at 807; *see also SEC v. Blatt*, 583 F.2d 1325, 1334 n.29 (5th Cir. 1978). "[T]he likelihood of future violations of law can be inferred from defendants' past illegal conduct." *CFTC v. Morgan, Harris & Scott, Ltd.*, 484 F. Supp. 669, 677 (S.D.N.Y. 1979).

46.     Permanent injunctive relief is merited here. Mikkelsen repeatedly and deliberately violated the Act and Regulations by engaging in blatantly illegal conduct for years, since at least 2015 and continuing for many years. Mikkelsen fraudulently solicited and accepted over $1.5 million, misappropriated hundreds of thousands of dollars of those funds, and hid the nature of his conduct through false account statements and misrepresentations. Indeed, the Complaint alleges that client funds sent to bank accounts in Portugal, Latvia, and Colorado and at an American payment process company—were never used, as promised, for forex trading. (Compl. ¶¶ 27-28). And while Mikkelsen has been served, he has not responded in any manner and thus manifestly has not taken any accountability for the wrongfulness of his actions. The violations alleged here demonstrate a high level of scienter, egregious fraud, and a reasonable likelihood of future violations and warrant the imposition of a permanent injunction, including trading and registration bans. *See SEC v. Pentagon Capital Mgmt. PLC*, 844 F. Supp. 2d 377, 424 (S.D.N.Y. 2012), *aff'd in part, vacated in part*, 725 F.3d 279 (2d Cir. 2013) (defendants' intentional and egregious fraudulent trading scheme in violations of securities laws over the course of several years

]]>

warranted injunction); *CFTC v. McDonnell*, 287 F.Supp.3d 213 (E.D.NY 2018) (issuing a permanent trading ban against defendants who for three months made fraudulent solicitations and misappropriated customer funds in connection with cryptocurrency transactions); *CFTC v. Yorkshire Grp., Inc.*, No. 13-5323 (AMD) (ST), 2016 WL 8256380, at *5-6 (E.D.N.Y. Aug. 19, 2016), *report and recommendation adopted*, No. 13-5323 (AMD) (ST), 2016 WL 5942310 (E.D.N.Y. Oct. 12, 2016) (on default, issuing permanent trading ban against company defendant that repeatedly engaged in knowing and continuous unlawful transactions over several months that garnered thousands of dollars of fees from customers); *CFTC v. EJS Capital Mgmt., LLC*, No. 14-3107 (CM), 2015 WL 13359358, at *5, *8-9 (S.D.N.Y. Dec. 18, 2015) (on default, issuing a permanent trading ban against company defendant that for over one year made fraudulent solicitations, issued false account statements, and misappropriated customer funds in connection with forex transactions); *CFTC v. Driver*, 877 F.Supp.2d 968 (C.D. Cal. 2012) (granting, on unopposed summary judgment motion, permanent injunction against an individual who had defrauded over 100 victims by, among other things, misrepresenting trading history and trading profits).

### B. Restitution is appropriate.

47. "The Court's authority to order restitution is ancillary to the Court's authority to order injunctive relief under § 6c of the Act." *CFTC v. Rolando*, 589 F. Supp. 2d 159, 172 (D. Conn. 2008); *see also FTC v. Five-Star Auto Club, Inc.*, 97 F. Supp. 2d 502, 533 (S.D.N.Y. 2000)); *SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1474 (2d Cir. 1996) (the district court "has broad equitable power to fashion appropriate remedies"). And, for conduct occurring after July 16, 2011, Section 6c(d)(3) of the Act, 7 U.S.C.§ 13a-1(d)(3) (2020), specifically authorizes courts to order "restitution to persons who have sustained

losses proximately caused by such violation (in the amount of such losses)." The Court's determination of restitution in this case is governed by its equitable powers to make whole Mikkelsen's victims. The pervasive nature of the fraudulent acts should require Mikkelsen to make full restitution. *See, e.g., CFTC v. Friedlander*, No. 03-cv-8319, 2007 WL 858768, at *5 (S.D.N.Y. Feb. 20, 2007) (consent order imposing full restitution).

48. Here, the losses proximately caused by Mikkelsen's violations are $1,191,286.87, computed as the total amount invested by Mikkelsen's victims less any funds returned to victims. (Slowly Default Decl. ¶ 6, Ex. 1.) This amount of losses is also set forth in a Statement of Damages, filed separately as Exhibit 1 to the Slowly Default Decl. under ECF Rule 16.3(b). Accordingly, Plaintiff respectfully requests that the Court order Mikkelsen to pay restitution in the amount of $1,191,286.87, plus post-judgment interest. Post-judgment interest should be paid at the then-prevailing Treasury Bill rate, under 28 U.S.C. § 1961 (2012). The Commission also requests that the National Futures Association be appointed Monitor to collect restitution payments from Mikkelsen and distribute such payments to Mikkelsen's victims.

### C. A Civil Monetary Penalty is appropriate.

49. The Court has authority to impose, on any person found to have committed any violation of the Act, a CMP in the amount of not more than the greater of $185,424 per violation or triple the monetary gain to the person for each violation. *See* 7 U.S.C. § 13a-1(d)(1)(A) (2018); Regulation 143.8(a)(1)(ii)(D), 17 C.F.R. § 143.8(a)(1)(ii)(D) (2020). The Court should fashion a CMP appropriate to the gravity of the offense and sufficient to act as a deterrent. *Miller v. CFTC*, 197 F.3d 1227, 1236 (9th Cir. 1999). The ability of a defendant to pay the penalty "is not a relevant consideration." *CFTC v. Aurifex Commodities Trading*

18

*Co.*, No. 06-cv-166, 2008 WL 299002 at *12 (W.D. Mich. Feb. 1, 2008). "In determining how extensive the fine for violations of the Act ought to be, courts and the Commission have focused upon the nature of the violations." *CFTC v. PMC Strategy, LLC*, 903 F. Supp. 2d 368, 384 (W.D.N.C. 2012) (internal quotation marks and citations omitted). Conduct that violates the core provisions of the Act, such as customer fraud, is considered very serious. *JCC, Inc. v. CFTC*, 63 F.3d 1557, 1571 (11th Cir. 1995).

50. The Court should impose a civil monetary penalty of $3,573,860.61, which is triple the amount of Mikkelsen's monetary gain from his violations of the Act and Regulations. Mikkelsen's intentional fraudulent conduct resulted in a monetary gain to him of at least $1,191,286.87, which is the gross amount of funds Defendant received from victims in connection with their fraudulent scheme less the funds returned to the victims. (ECF No. 1, Compl.) (Slowly Default Decl. ¶6, Ex. 1). In light of the unjust gains to Mikkelsen, the egregiousness of his intentional conduct, and his failure to accept any responsibility, the Commission seeks, as a deterrent, to impose a CMP of triple the monetary gain to Mikkelsen—i.e., three million five hundred seventy-three thousand eight hundred and sixty dollars and sixty-one cents ($3,573,860.61). *See CFTC v. Hays*, No. 09-cv-259, 2011 WL 311366, at *4 (D. Minn. Jan. 28, 2011) (imposing penalties of triple the gain finding such penalties necessary to adequately address defendants' violations and deter against future violation where defendant had defrauded 114 clients using false account statements and directing creation of false statement); *CFTC v. Emerald Worldwide Holdings, Inc.*, No. 03-cv-8339, 2005 WL 1130588, at *13 (C.D. Cal. Apr. 19, 2005) (imposing CMP in default judgment of approximately triple the monetary gain). *Emerald Worldwide Holdings* is instructive; that court took the well-pleaded factual allegations as

true in a default context and imposed triple the monetary gain on a defaulting party that had engaged in the serial misappropriation of customer funds in forex products through the creation of false account statements and other materials falsely describing the nature of Emerald's business. *Id.* at *3-5.[3] And, like the defendant in *Hays*, Mikkelsen should pay post-judgment interest at the then-prevailing Treasury bill rate under 28 U.S.C. § 1961. *Id,* at *7.

Dated: December 16, 2021
                                       s/ James G. Wheaton
James G. Wheaton
Commodity Futures Trading Commission
Division of Enforcement
140 Broadway, 19th Floor
New York, NY 10005
jwheaton@cftc.gov
(646) 746-9740

---

[3] *See also*, Letter dated March 12, 2021, providing the Court with caselaw in the United States District Court for the Southern District of New York supporting an order mandating Defendant Mikkelsen to pay a CMP of triple the monetary gain for this fraudulent scheme. (ECF. No. 47).