UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| U.S. COMMODITY FUTURES TRADING COMMISSION,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>CASPER MIKKELSEN, a/k/a "Carsten Nielsen," a/k/a "Brian Thomson," a/k/a "Thomas Jensen" and a/k/a "Casper Muller,"<br><br>　　　　　　Defendant. | Case No. 1:20-CV-03833 (JPC)<br><br>**DECLARATION OF JUDITH M. SLOWLY IN SUPPORT OF PROPOSED FINAL JUDGMENT BY DEFAULT**<br><br>ECF Case |

I, Judith M. Slowly declare, pursuant to 28 U.S.C. § 1746, as follows:

　　1.　　I am employed as a Senior Futures Trading Investigator by the Division of Enforcement of the Commodity Futures Trading Commission ("Commission" or "Plaintiff") located at 140 Broadway, 19th Floor, New York, N.Y. 10005. I have been so employed since August 2004. My responsibilities as a Senior Futures Trading Investigator include investigating registered and unregistered commodity firms and individuals in order to ensure compliance with, and enforcement of, the Commodity Exchange Act and the rules and regulations thereunder.

　　2.　　On May 18, 2020, the Commission filed a complaint against defendant Casper Mikkelsen, a/k/a "Carsten Nielsen," a/k/a "Brian Thomson," "a/k/a "Thomas Jensen" and a/k/a "Casper Muller" ("Defendant Mikkelsen"), which Defendant Mikkelsen has failed to answer or

1

otherwise respond to. Accordingly, the Commission now seeks default judgment against Defendant Mikkelsen. I make this Declaration in support of Plaintiff's Motion in Support of Proposed Final Judgment by Default, Permanent Injunction, Civil Monetary Penalties, and Other Statutory and Equitable Relief Against Casper Mikkelsen ("Default Judgment").

3. I have been assigned to the Plaintiff's investigation and litigation in the above-captioned case. I am familiar with the facts related to, and documents and communications obtained in, this case.

4. As part of my investigatory responsibilities in this case, I participated in interviews of individuals and reviewed information related to entities ("clients") who invested funds for the purpose of trading foreign currency with a company called GNTFX to be traded by Defendant Mikkelsen.

5. I have also reviewed and analyzed materials relating to Defendant Mikkelsen and his clients, including:

    a. Materials produced by Defendant Mikkelsen's clients including, but not limited to, emails and documents between clients and Defendant Mikkelsen, GNTFX and other third parties;

    b. Account statements and bank records for accounts where clients deposited funds or clients received funds. These records were produced by banking institutions;

    c. Online websites including but not limited to www.gntfx.com and www.flipstidefx.com;

    d. Documents and information made available through relevant databases, including CLEAR, an online investigative platform commonly utilized by law enforcement agencies and operated through Thomson Reuters; and

e.  Other confidential materials, including materials made available to the Commission by foreign regulators.

6. Based on my review of the Commission's materials set forth above and investigative activities in which I personally participated, I have determined the following:

a.  From 2015 to the present, Defendant Mikkelsen, a resident of Denmark who has used multiple aliases and fraudulently solicited 106 clients for the purported purpose of trading foreign exchange currency contracts ("Forex") with GNTFX. For example, Defendant Mikkelsen misrepresented information to clients about his historical trading performance, that their funds would be deposited in segregated fiduciary client bank accounts and used to buy and sell forex, and that clients' account statements accurately reflected profits and losses of forex trades executed on their behalf. In fact, client funds were misappropriated, there were no fiduciary client bank accounts into which client money was deposited, and there was no trading of forex on behalf of clients.

b.  Attached as an exhibit to this Declaration is a chart that I prepared summarizing the amount invested by each client, amount returned to the client, the excess amount returned to the client, if any, and restitution owed to the client. (Exhibit ("Ex.") 1), Statement of Damages).

c.  As reflected in Ex. 1, Statement of Damages, clients deposited $1,536,782.47 with GNTFX for the purpose of trading forex. Out of these funds deposited, Defendant Mikkelsen returned a total of $519,647 to clients and 11 of those clients received a total of $174,151.40 in excess of what they invested. In sum, Defendant Mikkelsen caused clients to suffer losses totaling $1,191,286.87,

3

          computed as the total amount invested by clients minus any funds returned to clients.

    d.    My review and analysis of bank records and client documentation along with client interviews revealed that client funds were deposited into Defendant Mikkelsen controlled bank accounts and that those funds were misappropriated by Defendant Mikkelsen for his own benefit and not used for the promised purpose of trading forex. For example, Defendant Mikkelsen purchased Bitcoin with client funds and used their funds for foreign travel, health insurance, furniture, car loans, art purchases, clothing, ATM cash withdrawals, and/or debit card transfers.

7.    I have reviewed Defendant Mikkelsen's opening bank account documentation and monthly statements at his bank accounts at a Danish bank ("Danish Bank #1"). Danish Bank #1 produced those records to the Danish Financial Services Authority ("DFSA"), the government financial regulatory body in Denmark responsible for the regulation of the Danish financial markets and, in turn, DFSA produced those records to the Commission. These records are from January 2010 to March 2019. As part of this production, Danish Bank #1 produced Mikkelsen's driver's license and his Southern Denmark regional identification card, showing that he had changed his name to Casper Muller by August 22, 2018. Thereafter, his monthly bank account statements from September 2018 to March 2019 show his name as Casper Muller, his new legal name. I have also reviewed Defendant Mikkelsen's monthly bank statements at Danish Bank #1 from June 2015 to March 2019 and they consistently show Defendant Mikkelsen's personal address in Kolding, Denmark ("Denmark Address").

8.    Plaintiff commenced its action by filing with this Court a Complaint against Defendant Mikkelsen on May 18, 2020. (ECF No. 1, Complaint); (Ex. 2).

9. On December 10, 2021, the Clerk of this Court entered the Certificate of Default of Defendant Mikkelsen. (ECF No. 65) (Ex. 3).

10. On December 16, 2021, I reviewed the Court's docket report for this action, which reflects that Defendant has not answered, pleaded, or otherwise defended against the Commission's Complaint and has also not made an appearance in his case.

11. Counsel of record for the Commission have not received any correspondence or communication of any kind from Mikkelsen during the pendency of this action, Mikkelsen's deadline to file an answer has not been extended because he never submitted any request for an extension, and Mikkelsen has not submitted any pre-motion letter relating to a motion to dismiss as required by Rule 6 of Judge Cronan's Individual Rules and Practices in Civil Cases.

I declare under penalty of perjury that the foregoing is true and correct.


Executed this 16 day of December 2021 at New York.


s/ Judith M. Slowly
Judith M. Slowly
Commodity Futures Trading Commission
Division of Enforcement
140 Broadway, 19th Floor
New York, NY 10005